**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **IN RE SWISHER HYGIENE, INC. SECURITIES AND DERIVATIVE LITIGATION** | MDL DOCKET NO: 3:12-MD-2384-GCM<br><br>FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    JURISDICTION AND VENUE ........................................................................... 5

III.   PARTIES ............................................................................................................. 5

IV.    CONFIDENTIAL WITNESS .............................................................................. 9

V.     CLASS ACTION ALLEGATIONS ................................................................... 10

VI.    SUBSTANTIVE ALLEGATIONS .................................................................... 12

       A.   Defendants Repeatedly Made False and Misleading Statements During the Class Period Regarding the Company's Financial Results and Internal Controls ................................. 12

       B.   Swisher Disclosed Improper Accounting and the Need to Restate its Results for the First Three Quarters of 2011 ............................................................................... 54

       C.   Defendants' Statements During the Class Period Regarding the Company's Financial Results and Internal Controls Were Knowingly or Recklessly False and Misleading When Made ................................................................................ 60

VII.   LOSS CAUSATION / ECONOMIC LOSS ....................................................... 78

VIII.  NO SAFE HARBOR ......................................................................................... 79

IX.    CLAIMS ............................................................................................................ 80

X.     PRAYER FOR RELIEF .................................................................................... 82

XI.    JURY TRIAL DEMANDED ............................................................................. 83

Lead Plaintiffs James F. Caird and Eugene W. Stranch ("Lead Plaintiffs" or "Plaintiffs") bring this action for violations of the federal securities laws against Defendants Swisher Hygiene, Inc., Steven R. Berrard, Michael J. Kipp and Hugh H. Cooper ("Defendants"). Lead Plaintiffs, by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Lead Plaintiffs, which are alleged upon personal knowledge. Lead Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Swisher Hygiene, Inc. ("Swisher" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and media reports issued and disseminated by Swisher; (c) interviews with confidential witnesses who have personal knowledge of the allegations contained herein; and (d) review of other publicly available information concerning Swisher.

## I.     INTRODUCTION

1.      This is a securities class action on behalf of all investors who purchased Swisher's common stock on the NASDAQ exchange or otherwise acquired the Company's common stock between March 31, 2011 and March 28, 2012 inclusive ("Class Period") for violations of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Swisher provides hygiene and sanitation solutions to customers throughout North America and internationally through a network of company-owned operations, franchises and master licensees. On February 2, 2011, Swisher's common stock began to trade on NASDAQ in the United States.

3.      On March 28, 2012, Swisher issued a press release announcing that it would file a Form 12b-25 with the Securities and Exchange Commission ("SEC") to request an additional 15

1

days to file its Form 10-K for the year ended December 31, 2011. In the March 28, 2012 press release, Swisher announced that the delay was due to an ongoing internal review by Swisher's Audit Committee relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable. Swisher stated that the adjustments would be non-cash in nature. These factors led the Company to announce that its financial statements for the quarters ended March 31, 2011, June 30, 2011, and September 30, 2011, as well as other information in the Company's quarterly reports filed with the SEC during those periods, should no longer be relied upon.

4.      Swisher initiated an internal review that led to the March 28, 2012 announcement after a former employee raised concerns regarding the Company's accounting policies. After the Company's Audit Committee, independent auditor and outside experts reviewed Swisher's financial reports, the Company announced that it would review the accounting entries relating to each of the staggering number of acquisitions, 63 in total, made during the year ended December 31, 2011.

5.      Based on the announcements of March 28, 2012, Swisher's stock price fell 9.5% from a closing price of $3.05 per share on March 27, 2012 to a closing price of $2.76 per share on March 28, 2012. Trading in the Company's securities reached its heaviest volume in nearly 4 months.

6.      As the market assimilated the news disseminated on March 28, 2012, Swisher's stock price continued its free-fall, dropping an additional $0.33 per share on March 29, 2012, closing at $2.43 per share on unusually heavy trading volume, a daily loss of nearly 12% that brought the two day loss to more than 20%. Trading on April 2, 2012 continued this trend, with a closing price of $2.25, representing a total loss of over 26% from the closing price on March

2

27, 2012. Thus, the Company lost more than a quarter of its value in less than one week's time.

7. On May 17, 2012, Swisher announced that its Audit Committee had "substantially completed the investigative portion of its internal review" and "based on the recommendation of the Audit Committee, determined that Michael Kipp, Swisher Hygiene's Senior Vice President and Chief Financial Officer, *be separated from Swisher Hygiene, effective immediately*. Also, the Board, based on the recommendation of the Audit Committee, determined that *two additional senior accounting personnel be separated from Swisher Hygiene, effective immediately*."[1] One of the senior accounting personnel terminated along with Defendant Kipp has been identified by the Confidential Witnesses (who are described below) as Joann Viard, the Company's Director of SEC Reporting during the Class Period.

8. On February 20 and 21, 2013, Swisher filed its amended Quarterly Reports on Form 10-Q for the quarters ending March 31, 2011, June 30, 2011 and September 30, 2011 (collectively, the "Restatement"). The Restatement showed that Swisher's previously reported revenues for the first three quarters of 2011 were materially overstated and Swisher had to adjust nearly every line item on its financial statements.

9. Unlike the Company's original disclosure in March 2012 that the Restatement adjustments were primarily due to non-cash adjustments for the calculation of the allowance for doubtful accounts and accounting for business acquisitions, the adjustments in the Restatement had an impact on nearly every balance sheet and income statement category, including cash. In fact, as identified in the Restatement, then-current expenses were reclassified into shareholders' equity in order to reduce the Company's reported expenses and thereby increase its earnings – or decrease its reported loss. In other words, Swisher accounting personnel changed journal entries that recorded items as current expenses and moved them into the stockholders' equity account,

---
[1] Unless otherwise noted, emphasis has been added.

3

for the purpose of understating expenses and overstating reported earnings or understating the reported loss.

10. These types of adjustments were not "accidents" or "errors," but rather were intentional changes to previously made journal entries. In the Restatement, Swisher admitted that there were material weaknesses in its internal controls, meaning "there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis." As part of its Restatement disclosures concerning deficiencies in internal controls that were in place at the time the financial statements were being prepared, Swisher admitted that it placed "undue emphasis on internal anticipated financial results in communications during the financial statement close process." In other words, and as confirmed by the Confidential Witnesses, Swisher was attempting to manage its earnings by manipulating its accounting results to meet internal projections.

11. The Company also admitted in the Restatement that its internal controls were inadequate, as the quarter end "close process allow[ed] for override of entity-level controls resulting in a number of journal entries having either insufficient or no support." In other words, at the close of each quarter, individuals at Swisher had the ability to, and did, change journal entries from their original entry to new entries, which lacked support.

12. In sum, Defendants' representations to investors during the Class Period that Swisher had adequate internal controls were materially false and misleading when they were made. Members of Swisher's accounting department altered journal entries in order to meet internal earnings projections thereby knowingly, or in reckless disregard for the truth, causing Swisher to issue materially false and misleading financial statements. These accounting changes were made with the knowledge of, or in reckless disregard of, their falsity by Defendants

4

Berrard, Kipp and Cooper.  Thus, Swisher's reported financial results were materially false and misleading when made and the misrepresentations identified herein were made with scienter.

13.     As alleged herein, Defendants' pattern of misconduct caused Lead Plaintiffs and other members of the Class to purchase Swisher common stock at artificially inflated prices, thereby causing significant losses and damages.

## II.     JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

16.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

17.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## III.     PARTIES

18.     By Court Order dated October 18, 2012, James F. Caird and Eugene Wilkes Stranch were appointed Lead Plaintiffs.  As set forth in their certifications previously filed with the Court, Lead Plaintiffs purchased or otherwise acquired Swisher common stock during the Class Period and suffered substantial damages as a result of Defendants' misconduct, as alleged herein.

5

19.     Defendant Swisher Hygiene, Inc. is a Delaware corporation with its principle place of business in Charlotte, North Carolina.  Swisher provides hygiene and sanitation solutions to customers throughout North America and internationally through a network of company-owned operations, franchises and master licensees.

20.     Defendant Steven R. Berrard ("Berrard") was President, Chief Executive Officer and a director of Swisher at all relevant times during the Class Period.  Subsequent to the termination of Defendant Michael J. Kipp, Berrard served as the Company's interim CFO until June 12, 2012.  Berrard resigned as President and CEO on August 20, 2012, but remains a director of the Company.  As of December 31, 2011, Berrard was Swisher's largest individual shareholder holding 14.3% of its common stock.  Berrard signed each of the quarterly reports filed with the SEC during the Class Period that were restated and the corresponding Sarbanes Oxley ("SOX") certifications, attesting that Swisher's financial statements were accurate and that its systems of internal controls were adequate.  Berrard also signed other SEC filings during the Class Period that contained false and misleading statements, including the 2010 Annual Report on Form 10-K and corresponding SOX certification as well as Form S-1 and 8-K filings, as discussed in detail in Section VI.

21.     As of the start of the Class Period, Defendant Michael J. Kipp ("Kipp") was the Vice President and Chief Accounting Officer of Swisher.  On or about May 5, 2011, Kipp was appointed Senior Vice President and Chief Financial Officer of Swisher and served in that capacity until his employment was terminated on or about May 14, 2012.  Kipp signed each of the quarterly reports that were filed with the SEC during the Class Period that were restated (*i.e.,* the 10-Q filings for the first, second and third quarters of 2011) and the corresponding SOX certifications, attesting that Swisher's financial statements were accurate and that its systems of

6

internal controls were adequate. Kipp also signed other SEC filings during the Class Period that contained false and misleading statements, including the 2010 Annual Report on Form 10-K as well as Form S-1 filings, as discussed in detail in Section VI.

22.     As of the start of the Class Period, Defendant Hugh H. Cooper ("Cooper") was the Chief Financial Officer and Treasurer of Swisher. On or about May 5, 2011, Cooper's tenure as Chief Financial Officer ended when he was replaced by Defendant Kipp and promoted by the Company's Board to Senior Vice President. Cooper continued to serve as Senior Vice President and Treasurer until he was terminated from the Company on November 9, 2012. During the Class Period, Cooper signed the Company's 2010 Annual Report on Form 10-K filed with the SEC on March 31, 2011 and the corresponding SOX certification, attesting that Swisher's financial statements were accurate and that its systems of internal controls were adequate. Cooper also signed other SEC filings during the Class Period that contained false and misleading statements, including Form S-1 filings, as discussed in detail in Section VI.

23.     Defendants Berrard, Kipp and Cooper are referred to herein as the Individual Defendants.

24.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Swisher's business, operations, operational trends, financial statements, internal controls, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

25.     It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, financial condition and internal controls, as alleged herein.  Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

26.     As officers and directors of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was and is traded on the NASDAQ, and governed by the provisions of the federal securities laws, Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings,   present and future business prospects, and internal controls and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information.  Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

27.     Defendants, because of their positions of control and authority as officers and/or

directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

28. Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Swisher common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Swisher's business, operations, management, internal controls and the intrinsic value of its common stock; and (ii) caused Lead Plaintiffs and other shareholders to purchase or otherwise acquire Swisher common stock at artificially inflated prices.

## IV.     CONFIDENTIAL WITNESS

29. Confidential Witness (CW #1) is a former employee of Swisher Hygiene who worked in Swisher's accounting department and had responsibility for the Company's financial reporting to the SEC. Prior to separating from Swisher in December 2012, CW #1 reported to the CFO and had regular dealings with Swisher's accounting personnel in the regular course of Swisher's business and therefore possesses information directly related to Swisher's accounting practices and internal controls.

30. Confidential Witness (CW #2) is a former employee of Swisher Hygiene who worked in Swisher's accounting department and had responsibility for the Company's internal

9

audit during the time that the Company was preparing the Restatement. Prior to separating from Swisher in November 2012, CW #2 reported to the CFO and had regular dealings with Defendant Berrard and Swisher's accounting personnel in the regular course of Swisher's business and therefore possesses information directly related to Swisher's accounting practices and internal controls.

## V.    CLASS ACTION ALLEGATIONS

31.    Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of all those who purchased the common stock of Swisher on NASDAQ or otherwise acquired the Company's stock during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.    The members of the Class are so numerous that joinder of all members is impracticable. According to Swisher's amended 2011 third quarter form 10-Q, filed with the SEC on February 21, 2013, there are over 173 million shares of Swisher common stock outstanding and approximately 111 million shares available for purchase by public shareholders. Throughout the Class Period, Swisher common shares were actively traded on the NASDAQ exchange. While the exact number of Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Swisher or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

10

33. Lead Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Lead Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants issued materially false and misleading statements regarding Swisher's financial statements and internal controls;

(b) whether Defendants acted with the requisite scienter when issuing the materially false and misleading statements;

(c) whether Swisher's common stock trades in an efficient market and whether the stock price was artificially inflated, and

(d) whether and to what extent members of the Class have sustained damages from the wrongful conduct complained of herein and the proper measure of those damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

11

# VI.   SUBSTANTIVE ALLEGATIONS

A.   **Defendants Repeatedly Made False and Misleading Statements During the Class Period Regarding the Company's Financial Results and Internal Controls**

***The March 31, 2011 False and Misleading Statements***

37.   The Class Period in this action begins on March 31, 2011.  On that date, Swisher filed with the SEC a Form S-1, which included a description of recent events.  The S-1 explained that "On March 1, 2011, we closed the acquisition of Choice and issued approximately 8.3 million shares of our common stock to the former shareholders of Choice and assumed approximately $40.9 million in debt, of which $39.2 million was paid down with proceeds from the private placement of the Subscription Receipts."

38.   The S-1, which was signed by Defendants Berrard, Kipp and Cooper, provided the following false and misleading information regarding the preliminary allocation of the purchase price of the Choice acquisition, which purportedly was "based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011":

| Net tangible assets acquired: | (*in thousands*) |
|---|---|
| Cash and cash equivalents | $ 341 |
| Receivables, net | 6,096 |
| Inventory | 151 |
| Property and equipment | 29,743 |
| Franchise agreements | 27,840 |
| Non compete agreements | 2,880 |
| Deferred income tax assets and other assets | 1,536 |
| Accounts payable and expenses | (6,221) |
| Capital lease obligations | (3,995) |
| Deferred income tax liabilities | (11,605) |
| Total tangible assets acquired | 46,766 |
| Goodwill | 50,513 |
| Total purchase price | 97,279 |
| Less: Debt assumed | 40,944 |
| Less: Issuance of shares | 48,781 |
| Cash paid (including prepayment penalty) | $       7,554 |

12

39. The false and misleading statements described in the immediately preceding paragraph were repeated verbatim in the Company's Form S-1/A filings on April 18, 2011 and April 21, 2011 (the "Form S-1/A Filings"). The Form S-1/A filings were signed by Defendant Berrard on his own behalf and on behalf of Defendants Kipp and Cooper as "attorney-in-fact."

40. Also on March 31, 2011, Swisher filed with the SEC a Form 8-K/A, signed by Defendant Berrard, detailing the acquisition of Choice. Attached to this filing as Exhibit 99.3 were the Unaudited Pro Forma Condensed Combined Financial Statements of Swisher Hygiene Inc. and Subsidiaries for the year ending December 31, 2010 (the "Swisher Pro Forma"). The Pro Forma Condensed Combined Financials, which are presented for illustrative purposes, purportedly are "based on preliminary valuations of assets and liabilities acquired and consideration paid in the acquisition of Choice." In Exhibit 99.3, Swisher falsely stated that the Company, calculating a condensed combined pro forma with Choice for the year ended December 31, 2010, had over $55.5 million of cash on hand, accounts receivable of over $13.2 million and total assets of over $236 million. In Exhibit 99.3 to the March 31, 2011 8-K/A, Defendants also reiterated the following false and misleading information regarding the preliminary allocation of the purchase price of the Choice acquisition, which purportedly was "based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011":

| Net tangible assets acquired: | (in thousands) |
|---|---|
| Cash and cash equivalents | $ 341 |
| Receivables, net | 6,096 |
| Inventory | 151 |
| Property and equipment | 29,743 |
| Franchise agreements | 27,840 |
| Non compete agreements | 2,880 |
| Deferred income tax assets and other assets | 1,536 |
| Accounts payable and expenses | (6,221) |
| Capital lease obligations | (3,995) |

13

| | | |
|---|---|---|
| Deferred income tax liabilities | | (11,605) |
| Total tangible assets acquired | | 46,766 |
| Goodwill | | 50,513 |
| Total purchase price | | 97,279 |
| Less: Debt assumed | | 40,944 |
| Less: Issuance of shares | | 48,781 |
| Cash paid (including prepayment penalty) | $ | 7,554 |

41.    Also on March 31, 2011, Swisher issued its Annual Report (the "2010 Annual Report"), signed by Defendants Berrard, Kipp and Cooper, which reiterated false and misleading statements regarding the Choice acquisition, including the following statements regarding the preliminary allocation of the purchase price, which purportedly was "based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011":

| Net tangible assets acquired: | | (in thousands) |
|---|---|---|
| Cash and cash equivalents | | $ 341 |
| Receivables, net | | 6,096 |
| Inventory | | 151 |
| Property and equipment | | 29,743 |
| Franchise agreements | | 27,840 |
| Non compete agreements | | 2,880 |
| Deferred income tax assets and other assets | | 1,536 |
| Accounts payable and expenses | | (6,221) |
| Capital lease obligations | | (3,995) |
| Deferred income tax liabilities | | (11,605) |
| Total tangible assets acquired | | 46,766 |
| Goodwill | | 50,513 |
| Total purchase price | | 97,279 |
| Less: Debt assumed | | 40,944 |
| Less: Issuance of shares | | 48,781 |
| Cash paid (including prepayment penalty) | $ | 7,554 |

42.    The 2010 Annual Report also contained, attached to the filing as Exhibit 31.1 and 31.2, false and misleading certifications executed by Defendants Berrard and Cooper, respectively, which stated:

1.    I have reviewed this Annual Report on Form 10-K of Swisher Hygiene Inc.;

14

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and[2]

    d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

---

[2] The lettering of these paragraphs (transitioning from subpart (a) to subpart (c)) reflects the lettering in the original documents. This typographical error was reflected in subsequent certifications also.

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

45. The 2010 Annual Report also contained, attached to the filing as Exhibit 32.1, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Berrard, which falsely certified that:

In connection with the Annual Report on Form 10-K of Swisher Hygiene Inc. (the "Company") for the year ended December 31, 2010, as filed with the Securities and Exchange Commission (the "Report"), I, Steven R. Berrard, Chief Executive Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

46. The 2010 Annual Report also contained, attached to the filing as Exhibit 32.2, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Cooper, which falsely certified that:

In connection with the Annual Report on Form 10-K of Swisher Hygiene Inc. (the "Company") for the year ended December 31, 2010, as filed with the Securities and Exchange Commission (the "Report"), I, Hugh H. Cooper, Chief Financial Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

*The May 5, 2011 False and Misleading Statements*

47. Then, on May 5, 2011, Swisher filed with the SEC a Form 8-K signed by Defendant Berrard. Attached to this filing as Exhibits 99.1 and 99.2, respectively, were a presentation entitled "2011 Annual Stockholders Meeting May 5, 2011" (the "May 5, 2011 Presentation") and a press release entitled "Swisher Hygiene Provides 2011 Revenue Outlook At Annual Meeting" (the "May 5, 2011 Press Release").

48. The May 5, 2011 Presentation falsely stated that as of April 30, 2011, the Company had "[s]ignificant liquidity" with "[o]ver $165 million of cash on hand," that shareholder equity was "in excess of $325 million" and that the total debt to capital ratio was "less than 12%." The May 5, 2011 Presentation also falsely claimed that two of Swisher's recent acquisitions, ProClean of Arizona, Inc. and Mount Hood Solutions, had "[a]pproximately $44 million in combined revenue." Additionally, the May 5, 2011 Presentation falsely stated that the Company's annual run rate revenue exceeded $235 million, that the reported revenue for 2011 was expected to exceed $200 million, representing an increase of 280% over 2010 levels, and that "[r]un rate revenue will continue to grow as new business is added and acquisitions continue." The May 5, 2011 Presentation also falsely touted that Swisher had an "[e]xperienced management team" possessing "[s]ignificant depth of industry knowledge and experience" and "[c]onsiderable experience consolidating fragmented industries."

49. The May 5, 2011 Press Release reiterated the false and misleading statements regarding run-rate revenue, claiming that, "[t]he company currently expects 2011 revenue of approximately $200 million, with current run-rate revenue in excess of $230 million." The May 5, 2011 Press Release also contained the following false and misleading statements from Defendant Berrard:

17

We recognize our historical financial performance is not indicative of the rapid progress we are making acquiring businesses in our large addressable market. As we continue to acquire additional businesses, we expect to deliver significant efficiencies and cost-savings as we integrate these businesses into our platform. More importantly, we continue to identify and pursue attractive synergies and cross-selling opportunities across all of our service offerings as customers get introduced to our expanded service offerings.

***The May 16, 2011 False and Misleading Statements***

50. On May 16, 2011, Swisher filed with the SEC a Form 8-K signed by Defendant Berrard. Attached to this filing as Exhibits 99.1 and 99.2, respectively, were a press release entitled "Swisher Hygiene Announces Results for the Three-Month Period Ended March 31, 2011" (the "May 16, 2011 Press Release") announcing Swisher's results for the 2011 first quarter and a presentation entitled "Supplemental Data Fiscal quarter ended March 31, 2011" (the "May 16, 2011 Presentation").

51. The May 16, 2011 Press Release falsely stated, in part, as follows:

**First Quarter 2011 Highlights and Subsequent Events**

- Total revenue for the three months ended March 31, 2011 increased by 86% to $27.4 million compared to $14.7 million for the same period in 2010, led by an 89% increase in products revenue and a 139% increase in services revenue. Total revenue for the first quarter 2011 was up 55% sequentially from the fourth quarter of 2010. Excluding the impact of acquisitions, total revenue increased 15% from the same period of the prior year.

- Announced its outlook at annual meeting of $200 million in revenue for full year 2011, with current annualized Run-Rate Revenue in excess of $230 million.

- . . . . As of April 30, 2011, Swisher Hygiene had over $165 million in cash on its balance sheet.

\*      \*      \*

18

**First Quarter 2011 Results**

For the three months ended March 31, 2011, Swisher Hygiene reported total revenue of $27.4 million, an 86% increase from $14.7 million in the same prior-year period and a 55% sequential increase from the fourth quarter of 2010. The increase was primarily due to an 89% increase in products revenue due to the acquisitions made since August 2010 of eight franchisees and 15 independent hygiene and chemical companies, as well as a 139% increase in service revenue, largely attributable to the acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, total revenue increased 15% from the prior-year period.

Total costs and expenses for the three months ended March 31, 2011 increased by 106% to $33.0 million, compared to $16.0 million in the same prior-year period. Excluding acquisition and merger-related costs of $1.3 million, total costs and expenses increased 98%, compared to the same prior-year period.

The increase was primarily due to an 89% increase in selling, general and administrative costs resulting in part from the acquisitions made since August 2010 of eight franchisees and 15 independent hygiene and chemical companies, as well as the expansion of Swisher Hygiene's corporate, field and distribution sales organization to accelerate growth in the company's core chemical program. In addition, route expenses increased 124% caused by the addition of routes from completing the aforementioned acquisitions.

Excluding the impact of acquisitions, for the three months ended March 31, 2011 compared to the same prior-year period, total cost of sales were up 15%, total route expenses increased 21%, SG&A expenses increased 51% and depreciation and amortization increased 47%.

Net loss for the three months ended March 31, 2011 was $3.2 million, compared to a net loss of $1.6 million in the prior-year period. Excluding acquisition and merger-related costs of $1.3 million in the first quarter of 2011, net loss for the three months ended March 31, 2011 was $1.9 million.

Adjusted EBITDA for the three months ended March 31, 2011 was $1.0 million, compared to $0.3 million in the prior-year period

52.     The May 16, 2011 Press Release also contained the following false and

misleading statements from Defendant Berrard:

Our first quarter 2011 results are evidence of the opening stages of our strategy of rapid expansion through acquisitions and organic growth with an 86% growth in revenue from the same prior-year period, and a 55% sequential increase in revenue compared to our fourth quarter of 2010. This is just the beginning of the

19

increase in revenue that we anticipate reporting over the next few quarters and we believe the second half of the year should more accurately reflect how well our strategy is working in terms of revenue growth, margin expansion and leveraged operating costs. Our company will continue to use its capital wisely in order to maintain and extend its growth strategy going forward.

53.     In addition, the May 16, 2011 Presentation contained the following false and misleading statements:

### First Quarter Highlghts

- 86% increase in revenue

    - 15% excluding acquisition (organic growth)
    - 55% increase over fourth quarter 2010
    - Current run-rate revenue over $230 million . . . .

- Strengthened capital structure

* * *

### Widely Followed Industries . . . .

- Established patterns of consistent growth in revenue, earnings and cash flow

* * *

### Access to Capital . . . .

- Significant liquidity

    - Over $165 million of cash on hand
    - $100 million credit facility in place
    - Weighted average borrowing rate of 4.6%

- Shareholder equity in excess of $325 million

- Total debt to capital of less than 12%

54.     Also on May 16, 2011, the Company filed its Form 10-Q for the first quarter of 2011 (the "First Quarter 10-Q"), signed by Defendants Berrard and Kipp, which provided the following false and misleading statements regarding Swisher's financials:

20

**SWISHER HYGIENE INC. AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED BALANCE SHEETS (unaudited)**

| | Balance at March 31, 2011 |
|---|---|
| **ASSETS** | |
| **Current assets** | |
| Cash and cash equivalents | $  105,069,848 |
| Restricted cash | — |
| Accounts receivable (net of allowance for doubtful accounts of $1,404,365 at March 31, 2011 and $334,156 at December 31, 2010) | 14,893,924 |
| Inventory | 3,765,159 |
| Other assets | 2,797,557 |
| Total current assets | 126,526,488 |
| Property and equipment, net | 44,202,516 |
| Goodwill | 87,877,874 |
| Other intangibles, net | 44,076,159 |
| Other noncurrent assets | 3,736,793 |
| | $  306,419,830 |
| **LIABILITIES AND EQUITY** | |
| **Current liabilities** | |
| Accounts payable, accrued expenses, and other current liabilities | $  18,024,044 |
| Short term obligations | 19,734,219 |
| Advances from shareholder | 2,000,000 |
| Total current liabilities | 39,758,263 |
| Long term obligations | 37,527,478 |
| Deferred income tax liabilities | 9,746,713 |
| Other long term liabilities | 3,554,802 |
| Total noncurrent liabilities | 50,828,993 |
| **Commitments and contingencies** | |
| **Equity** | |
| **Swisher Hygiene Inc. stockholders' equity** | |
| Common stock, par value $0.001, authorized 400,000,000 shares; 148,455,429 and 114,015,063 shares issued and outstanding at March 31, 2011 and December 31, 2010, respectively | 148,455 |
| Additional paid-in capital | 227,569,009 |
| Accumulated deficit | (12,204,602 ) |
| Accumulated other comprehensive income | 216,008 |
| Total Swisher Hygiene Inc. stockholders' equity | 215,728,870 |
| Non-controlling interest | 103,704 |
| Total equity | 215,832,574 |
| | $  306,419,830 |

21

## SWISHER HYGIENE INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS (unaudited)

| | Three months ended March 31, 2011 |
|---|---:|
| **Revenue** | |
| Product | $ 15,426,822 |
| Service | 10,458,452 |
| Franchise and other | 1,511,029 |
| Total revenue | 27,396,303 |
| **Costs and expenses** | |
| Cost of sales | 9,583,685 |
| Route expenses | 7,115,071 |
| Selling, general, and administrative | 12,324,869 |
| Acquisition and merger expenses | 1,315,978 |
| Depreciation and amortization | 2,707,952 |
| Total costs and expenses | 33,047,555 |
| **Loss from operations** | (5,651,252) |
| **Other expense, net** | (2,273,119) |
| **Net loss before income taxes** | (7,924,371) |
| **Income tax benefit** | 4,709,793 |
| **Net loss** | $ (3,214,578) |
| **Loss per share** | |
| Basic and diluted | $ (0.03) |
| **Weighted-average common shares used in the computation of loss per share** | |
| Basic and diluted | 122,780,115 |

## SWISHER HYGIENE INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF EQUITY (unaudited)
## FOR THE THREE MONTHS ENDED MARCH 31, 2011

| | Common Stock | | Additional Paid-In | Accumulated | Accumulated Other Comprehensive | Swisher Hygiene Inc. Shareholders' | Non-controlling | Total |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Capital | Deficit | (Loss) / Income | Equity | Interest | Equity |
| **Balance as of December 31, 2010** | 114,015,063 | $ 114,015 | $ 54,725,897 | $ (8,996,759) | $ 73,985 | $ 45,917,138 | $ 110,439 | $ 46,027,577 |
| Shares issued in connection with private placements | 24,262,500 | 24,262 | 115,969,530 | | | 115,993,792 | | 115,993,792 |
| Shares issued in connection with the acquisition of Choice | 8,281,920 | 8,282 | 48,772,244 | | | 48,780,526 | | 48,780,526 |

22

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Shares issued in connection with acquisitions and purchases of property and equipment | 298,082 | | 298 | | 2,144,621 | | | 2,144,919 | | | 2,144,919 |
| Conversion of promissory note payable | 1,312,864 | | 1,313 | | 5,076,160 | | | 5,077,473 | | | 5,077,473 |
| Stock based compensation | | | | | 664,842 | | | 664,842 | | | 664,842 |
| Exercise of stock options | 285,000 | | 285 | | 215,715 | | | 216,000 | | | 216,000 |
| Foreign currency translation adjustment | | | | | | | 142,023 | 142,023 | | | 142,023 |
| Net loss | | | | | | (3,207,843) | | (3,207,843) | | (6,735) | (3,214,578) |
| **Balance as of March 31, 2011** | 148,455,429 | $ | 148,455 | $ | 227,569,009 | $ (12,204,602) | $ | 216,008 | $ 215,728,870 | $ 103,704 | $ 215,832,574 |

## SWISHER HYGIENE INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOWS (unaudited)

| | Three Months ended March 11, 2011 |
|---|---|
| **Cash used in operating activities** | |
| Net loss | $ (3,214,578) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
| Depreciation and amortization | 2,707,952 |
| Stock based compensation | 664,842 |
| Unrealized loss on fair value of convertible promissory notes | 1,961,100 |
| Deferred income tax liabilities | (3,954,793) |
| Changes in working capital components: | |
| Accounts receivable | (1,052,100) |
| Inventory | (184,723) |
| Other assets and noncurrent assets | (945,709) |
| Accounts payable, accrued expenses, and other liabilities | 1,179,087 |
| Cash used in operating activities | (2,838,922) |
| **Cash used in investing activities** | |
| Purchases of property and equipment | (3,019,248) |
| Acquisitions, net of cash acquired | (12,318,774) |
| Restricted cash | 5,193,333 |
| Cash used in investing activities | (10,144,689) |
| **Cash provided by financing activities** | |
| Proceeds from private placements, net of issuance costs | 116,253,791 |
| Principal payments on acquired Choice debt | (39,219,160) |
| Proceeds from line of credit, net of issuance costs | 27,639,355 |
| Payoff of lines of credit | (24,946,932) |

23

| | | |
|---|---|---:|
| Principal payments on debt | | (821,333) |
| Proceeds from exercise of stock options | | 216,000 |
| Payment of shareholder advance | | — |
| Proceeds from advances from shareholders | | — |
| Cash provided by financing activities | | 79,121,721 |
| Net increase (decrease) in cash and cash equivalents | | 66,138,110 |
| Cash and cash equivalents at the beginning of the period | | 38,931,738 |
| Cash and cash equivalents at the end of the period | $ | 105,069,848 |

55.     The First Quarter 10-Q also contained the following false and misleading statements regarding EBITDA:

| | | |
|---|---|---:|
| Net loss | $ | (3,214,578) |
| Income tax benefit | | (4,709,793) |
| Depreciation and amortization expense | | 2,707,952 |
| Interest expense, net | | 347,422 |
| Gains on foreign currency | | (35,403) |
| Unrealized loss on convertible debt | | 1,961,100 |
| Stock based compensation | | 664,842 |
| Acquisition and merger expenses | | 1,315,978 |
| Adjusted EBITDA | $ | (962,480) |

56.     The First Quarter 10-Q also reiterated the following false and misleading statements regarding the allocation of the purchase price of Choice, which purportedly was "based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011":

| | | |
|---|---|---:|
| **Net tangible assets acquired:** | | |
| Cash and cash equivalents | $ | 340,870 |
| Receivables | | 6,095,801 |
| Inventory | | 150,833 |
| Property and equipment | | 29,618,377 |
| Customer contracts | | 27,840,000 |
| Non-compete agreements | | 2,880,000 |
| Deferred income tax assets and other assets | | 2,234,452 |
| Accounts payable and accrued expenses | | (6,220,986) |
| Capital lease obligations | | (3,523,615) |
| Deferred income tax liabilities | | (12,001,506) |
| Total tangible assets acquired | | 47,414,226 |
| Goodwill | | 49,861,568 |
| Total purchase price | | 97,275,794 |
| Less: Debt assumed | | (40,941,484) |
| Less: Issuance of shares | | (48,780,526) |
| Cash paid (including prepayment penalty of $1,853,784) | $ | 7,553,784 |

24

57.     The First Quarter 10-Q also made the following false and misleading statements

regarding Swisher's internal controls:

**CONTROLS AND PROCEDURES**

We carried out an evaluation, under the supervision and with the participation of our management, including our principal executive officer [Berrard] and principal financial officer [Kipp], of the effectiveness of our disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) as of March 31, 2011. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that *our disclosure controls and procedures were effective as of March 31, 2011.*

58.     The Company's First Quarter 10-Q also contained, attached to the filing as

Exhibits 31.1 and 31.2, respectively, false and misleading certifications executed by Defendants

Berrard and Kipp.  These certifications stated:

1. I have reviewed this Quarterly Report on Form 10-Q of Swisher Hygiene Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about

25

the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

59.     The Company's First Quarter 10-Q also contained, attached to the filing as Exhibit 32.1, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Berrard, which falsely certified that:

In connection with the Quarterly Report on Form 10-Q of Swisher Hygiene Inc. (the "Company") for the quarter ended March 31, 2011, as filed with the Securities and Exchange Commission (the "Report"), I, Steven R. Berrard, Chief Executive Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

60.     The Company's First Quarter 10-Q also contained, attached to the filing as Exhibit 32.2, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Kipp, which falsely certified that:

> In connection with the Quarterly Report on Form 10-Q of Swisher Hygiene Inc. (the "Company") for the quarter ended March 31, 2011, as filed with the Securities and Exchange Commission (the "Report"), I, Michael J. Kipp, Senior Vice President, Chief Financial Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:
>
> (1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and
>
> (2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

### The August 5, 2011 False and Misleading Statements

61.     On August 5, 2011, Swisher filed with the SEC a Form S-1 (the "August 5, 2011 S-1"), signed by Defendants Berrard and Kipp, which reiterated the following false and misleading statements regarding the Choice acquisition:

The following table summarizes the preliminary allocation of the purchase price based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011 as follows:

| Net tangible assets acquired: | |
|---|---:|
| Cash and cash equivalents | $     340,870 |
| Receivables | 6,095,801 |
| Inventory | 150,833 |
| Property and equipment | 29,618,377 |
| Customer contracts | 27,840,000 |
| Non-compete agreements | 2,880,000 |
| Deferred income tax assets and other assets | 2,234,452 |
| Accounts payable and accrued expenses | (6,220,986) |
| Capital lease obligations | (3,523,615) |
| Deferred income tax liabilities | (12,001,506) |

27

| | | |
|---|---|---:|
| Total tangible assets acquired | | 47,414,226 |
| Goodwill | | 49,861,568 |
| Total purchase price | | 97,275,794 |
| Less: Debt assumed | | (40,941,484) |
| Less: Issuance of shares | | (48,780,526) |
| Cash paid (including prepayment penalty of $1,853,784) | $ | 7,553,784 |

62.     The August 5, 2011 S-1 also included the following false and misleading statements regarding additional acquisitions that Swisher completed during the first quarter of 2011:

> During the three months ended March 31, 2011, the Company acquired four of its franchisees and nine independent businesses, in addition to the acquisition of Choice. The results of operations of these acquisitions have been included in the Company's Condensed Consolidated Financial Statements since their respective acquisition dates. None of these acquisitions were significant to the Company's consolidated financial results and therefore, supplemental pro forma financial information is not presented.   The following table summarizes the current estimated aggregate fair values of the assets acquired and liabilities assumed at the date of acquisition for these acquisitions made during the three months ended March 31, 2011, excluding Choice:

| | | Three Months Ended March 31, 2011 |
|---|---|---:|
| Number of businesses acquired | | 13 |
| Net tangible assets acquired | | |
| Accounts receivable and other assets | $ | 653,850 |
| Inventory | | 457,090 |
| Property and equipment | | 861,820 |
| Accounts payable and accrued expenses | | (526,970) |
| Total | | 1,445,790 |
| Identifiable intangible assets: | | |
| Customer relationships | | 5,446,400 |
| Non-compete agreements | | 1,331,900 |
| Total | | 6,778,300 |
| Goodwill | | 8,273,100 |
| Aggregate purchase price | | 16,497,190 |
| Less: Stock issued | | 1,943,500 |
| Less: Earn outs | | 1,190,000 |
| Less: Notes issued or assumed on acquisition | | 8,598,700 |
| Cash paid on acquisitions | $ | 4,764,990 |

28

63.    The August 5, 2011 S-1 also provided the following false and misleading statements regarding Swisher's financial results:

**SWISHER HYGIENE INC. AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED BALANCE SHEETS (unaudited)**

| ASSETS | Balance at March 31, 2011 |
|---|---|
| **Current assets** | |
| Cash and cash equivalents | $ 105,069,848 |
| Restricted cash | — |
| Accounts receivable (net of allowance for doubtful accounts of $1,404,365 at March 31, 2011 and $334,156 at December 31, 2010) | 14,893,924 |
| Inventory | 3,765,159 |
| Other assets | 2,797,557 |
| Total current assets | 126,526,488 |
| Property and equipment, net | 44,202,516 |
| Goodwill | 87,877,874 |
| Other intangibles, net | 44,076,159 |
| Other noncurrent assets | 3,736,793 |
| | $ 306,419,830 |
| **LIABILITIES AND EQUITY** | |
| **Current liabilities** | |
| Accounts payable, accrued expenses, and other current liabilities | $ 18,024,044 |
| Short term obligations | 19,734,219 |
| Advances from shareholder | 2,000,000 |
| Total current liabilities | 39,758,263 |
| Long term obligations | 37,527,478 |
| Deferred income tax liabilities | 9,746,713 |
| Other long term liabilities | 3,554,802 |
| Total noncurrent liabilities | 50,828,993 |
| **Commitments and contingencies** | |
| **Equity** | |
| **Swisher Hygiene Inc. stockholders' equity** | |
| Common stock, par value $0.001, authorized 400,000,000 shares; 148,455,429 and 114,015,063 shares issued and outstanding at March 31, 2011 and December 31, 2010, respectively | 148,455 |
| Additional paid-in capital | 227,569,009 |
| Accumulated deficit | (12,204,602 ) |
| Accumulated other comprehensive income | 216,008 |
| Total Swisher Hygiene Inc. stockholders' equity | 215,728,870 |
| Non-controlling interest | 103,704 |
| Total equity | 215,832,574 |
| | $ 306,419,830 |

29

## SWISHER HYGIENE INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS (unaudited)

|  | | Three months ended March 31, 2011 |
|---|---|---|
| **Revenue** | | |
| Product | $ | 15,426,822 |
| Service | | 10,458,452 |
| Franchise and other | | 1,511,029 |
| Total revenue | | 27,396,303 |
| **Costs and expenses** | | |
| Cost of sales | | 9,583,685 |
| Route expenses | | 7,115,071 |
| Selling, general, and administrative | | 12,324,869 |
| Acquisition and merger expenses | | 1,315,978 |
| Depreciation and amortization | | 2,707,952 |
| Total costs and expenses | | 33,047,555 |
| **Loss from operations** | | (5,651,252) |
| **Other expense, net** | | (2,273,119) |
| **Net loss before income taxes** | | (7,924,371) |
| **Income tax benefit** | | 4,709,793 |
| **Net loss** | $ | (3,214,578) |
| **Loss per share** | | |
| Basic and diluted | $ | (0.03) |
| **Weighted-average common shares used in the computation of loss per share** | | |
| Basic and diluted | | 122,780,115 |


## SWISHER HYGIENE INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF EQUITY (unaudited)
## FOR THE THREE MONTHS ENDED MARCH 31, 2011

|  | Common Stock | | Additional Paid-In | | Accumulated | | Accumulated Other Comprehensive | | Swisher Hygiene Inc. Shareholders' | | Non-controlling | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Shares | Amount | Capital | | Deficit | | (Loss) / Income | | Equity | | Interest | | Equity | |
| **Balance as of December 31, 2010** | 114,015,063 | $ 114,015 | $ | 54,725,897 | $ | (8,996,759) | $ | 73,985 | $ | 45,917,138 | $ | 110,439 | $ | 46,027,577 |
| Shares issued in connection with private placements | 24,262,500 | 24,262 | | 115,969,530 | | | | | | 115,993,792 | | | | 115,993,792 |
| Shares issued in connection with the acquisition of Choice | 8,281,920 | 8,282 | | 48,772,244 | | | | | | 48,780,526 | | | | 48,780,526 |

30

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Shares issued in connection with acquisitions and purchases of property and equipment | 298,082 | 298 | 2,144,621 | | | 2,144,919 | | 2,144,919 |
| Conversion of promissory note payable | 1,312,864 | 1,313 | 5,076,160 | | | 5,077,473 | | 5,077,473 |
| Stock based compensation | | | 664,842 | | | 664,842 | | 664,842 |
| Exercise of stock options | 285,000 | 285 | 215,715 | | | 216,000 | | 216,000 |
| Foreign currency translation adjustment | | | | | 142,023 | 142,023 | | 142,023 |
| Net loss | | | | (3,207,843) | | (3,207,843) | (6,735) | (3,214,578) |
| **Balance as of March 31, 2011** | 148,455,429 | $ 148,455 | $ 227,569,009 | $ (12,204,602) | $ 216,008 | $ 215,728,870 | $ 103,704 | $ 215,832,574 |

## SWISHER HYGIENE INC. AND SUBSIDIARIES
## CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOWS (unaudited)

| | Three Months ended March 11, 2011 |
|---|---|
| **Cash used in operating activities** | |
| Net loss | $ (3,214,578) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
| Depreciation and amortization | 2,707,952 |
| Stock based compensation | 664,842 |
| Unrealized loss on fair value of convertible promissory notes | 1,961,100 |
| Deferred income tax liabilities | (3,954,793) |
| Changes in working capital components: | |
| Accounts receivable | (1,052,100) |
| Inventory | (184,723) |
| Other assets and noncurrent assets | (945,709) |
| Accounts payable, accrued expenses, and other liabilities | 1,179,087 |
| Cash used in operating activities | (2,838,922) |
| **Cash used in investing activities** | |
| Purchases of property and equipment | (3,019,248) |
| Acquisitions, net of cash acquired | (12,318,774) |
| Restricted cash | 5,193,333 |
| Cash used in investing activities | (10,144,689) |
| **Cash provided by financing activities** | |
| Proceeds from private placements, net of issuance costs | 116,253,791 |
| Principal payments on acquired Choice debt | (39,219,160) |
| Proceeds from line of credit, net of issuance costs | 27,639,355 |
| Payoff of lines of credit | (24,946,932) |

| | | | |
|---|---|---|---|
| Principal payments on debt | | | (821,333) |
| Proceeds from exercise of stock options | | | 216,000 |
| Payment of shareholder advance | | | — |
| Proceeds from advances from shareholders | | | — |
| Cash provided by financing activities | | | 79,121,721 |
| Net increase (decrease) in cash and cash equivalents | | | 66,138,110 |
| Cash and cash equivalents at the beginning of the period | | | 38,931,738 |
| Cash and cash equivalents at the end of the period | | $ | 105,069,848 |

### The August 15, 2011 False and Misleading Statements

64.    On August 15, 2011, Swisher issued a press release entitled "Swisher Hygiene Announces Results for the Three and Six-Month Periods Ended June 30, 2011" and subtitled "241% Increase in Revenue; 22% Organic Growth Rate Compared to Prior-Year Period [-] Company Raises Current Year Revenue Outlook" (the "August 15, 2011 Press Release"). Within the August 15, 2011 Press Release, the Company falsely stated that:

**Second Quarter 2011 Highlights and Subsequent Events**

- Total revenue for the three months ended June 30, 2011 increased by 241% to $51.7 million compared to $15.2 million for the same period in 2010, led by a 227% increase in product revenue and a 406% increase in service revenue. Excluding the impact of acquisitions, organic revenue for the quarter increased 22% from the same period in 2010.

- Total revenue for the second quarter 2011 was up 89% sequentially from the first quarter of 2011, and up 192% from the fourth quarter of 2010.

- Adjusted EBITDA was $3.0 million in the second quarter of 2011 versus an Adjusted EBITDA loss of $0.3 million for the prior-year period and compared to an Adjusted EBITDA loss of $1.0 million for the first quarter of 2011.

- Adjusted EBITDA margins in the second quarter of 2011 were 5.8%, compared to Adjusted EBITDA margins of -3.5% in the first quarter of 2011, -17.1% in the fourth quarter of 2010 and -2.2% in the prior-year period.

- Raised revenue outlook for full year 2011 to $220 million, with annualized Run-Rate Revenue now in excess of $280 million.

- . . . As of June 30, 2011, Swisher Hygiene had over $112 million in cash on its balance sheet. . . .

- In July 2011, in connection with the implementation of the regional operating structure, initiated approximately $5 million in cost and expense reductions that will be fully implemented in the third quarter, as well as regional chemical manufacturing initiatives that are expected to generate a 200 basis point sequential reduction in chemical cost of sales over the next four quarters.

* * * * *

**Second Quarter 2011 Results**

For the three months ended June 30, 2011, Swisher Hygiene reported total revenue of $51.7 million, a 241% increase from $15.2 million in the prior-year period and an 89% sequential increase from the first quarter of 2011. The increase was due to a 227% increase in product revenue, primarily due to the acquisitions made since August 2010 of 12 franchisees and 38 independent chemical, linen and waste companies, as well as a 406% increase in service revenue, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. as well as increased chemical revenue. Excluding the impact of acquisitions, organic revenue increased 22% from the same period of the prior year.

Total costs and expenses for the three months ended June 30, 2011 increased by 254% to $58.6 million, compared to $16.6 million in the same prior-year period. Excluding acquisition and merger-related costs of $2.8 million, total costs and expenses increased 236% compared to the prior-year period.

* * * * *

**Six Month 2011 Results**

For the six months ended June 30, 2011, Swisher Hygiene reported total revenue of $79.1 million, a 165% increase from $29.9 million in the prior-year period. The increase was primarily due to a 159% increase in product revenue, primarily due to acquisitions made since August 2010 of 12 franchisees and 38 independent chemical, linen and waste companies, as well as a 274% increase in service revenue, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc., as well as increased chemical revenue. Excluding the impact of acquisitions, organic revenue increased 17% from the prior-year period.

Total costs and expenses for the six months ended June 30, 2011 increased by 181% to $91.7 million, compared to $32.6 million in the prior-year period.

33

Excluding acquisition and merger-related costs of $4.1 million, total costs and expenses increased 169% compared to the prior-year period.

65.     Additionally, the August 15, 2011 Press Release contained the following statement from Defendant Berrard:

> The second quarter of 2011 was more indicative of the revenue growth that we expect through our strategy of rapid expansion, and we were very pleased to report $3 million in positive Adjusted EBITDA, which is further evidence that we are moving in the right direction toward profitability. . . .  We have consistently grown our Adjusted EBITDA margins to 5.8% in the second quarter of 2011 from negative 17.1% in the fourth quarter of 2010.  We have generated triple-digit revenue growth from the prior-year period, and an 89% sequential improvement in revenue from the first quarter of 2011.  Importantly, our revenue growth was not just from acquisitions — we generated organic revenue growth of 22%, evidence that our cross-selling and new account initiatives are beginning to pay dividends.  We completed 18 additional acquisitions during the quarter, which positions us for further rapid growth, and we were able to do so while still maintaining a cash balance of $112 million and retaining a significant amount of flexibility on our $100 million line of credit. We are very well positioned from a liquidity perspective in the second half of the year to not only continue our pace of acquisitions in key markets, but also to round out and supplement our service offering in markets where we already retain a significant presence, via tuck-in acquisitions that should provide for margin improvement at minimal cost.

66.     The August 15, 2011 Press Release was filed with the SEC as Exhibit 99.1 to Form 8-K signed by Defendant Berrard.

67.     Also on August 15, 2011, Swisher filed Form 10-Q, signed by Defendants Berrard and Kipp, with the SEC reporting its Second Quarter 2011 financial results (the "Second Quarter 10-Q"), which provided the following false and misleading statements:

**SWISHER HYGIENE INC. AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED BALANCE SHEETS (unaudited)**

|  | Balance at June 30, 2011 |
|---|---|
| **ASSETS** | |
| **Current assets** | |
| Cash and cash equivalents | $   112,434,487 |
| Restricted cash | — |
| Accounts receivable (net of allowance for doubtful accounts of $544,505 at June 30, 2011 and $334,156 at December 31, 2010) | 23,985,659 |

| | | |
|---|---:|---:|
| Inventory | | 10,848,743 |
| Other assets | | 2,327,617 |
| Total current assets | | 149,596,506 |
| Property and equipment, net | | 58,516,544 |
| Goodwill | | 139,637,334 |
| Other intangibles, net | | 74,377,697 |
| Other noncurrent assets | | 4,709,763 |
| | $ | 426,837,844 |

**LIABILITIES AND EQUITY**

| | | |
|---|---:|---:|
| **Current liabilities** | | |
| Accounts payable, accrued expenses, and other current liabilities | $ | 26,798,352 |
| Short term obligations | | 9,349,722 |
| Advances from shareholder | | 2,000,000 |
| Total current liabilities | | 38,148,074 |
| Long term obligations | | 31,171,918 |
| Deferred income tax liabilities | | 6,273,702 |
| Other long term liabilities | | 4,020,508 |
| Total noncurrent liabilities | | 41,466,128 |
| **Commitments and contingencies** | | |
| **Equity** | | |
| **Swisher Hygiene Inc. stockholders' equity** | | |
| Common stock, par value $0.001, authorized 400,000,000 shares; 172,559,865 and 114,015,063 shares issued and outstanding at June 30, 2011 and December 31, 2010, respectively | | 172,559 |
| Additional paid-in capital | | 366,360,979 |
| Accumulated deficit | | (19,338,496) |
| Accumulated other comprehensive income | | 28,600 |
| Total Swisher Hygiene Inc. stockholders' equity | | 347,223,642 |
| Non-controlling interest | | — |
| Total equity | | 347,223,642 |
| | $ | 426,837,844 |

**SWISHER HYGIENE INC. AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS (unaudited)**

| | | Three Months Ended June 30, 2011 | | Six Months Ended June 30, 2011 |
|---|---|---:|---|---:|
| **Revenue** | | | | |
| Product | $ | 27,976,912 | $ | 43,403,734 |
| Service | | 22,662,566 | | 33,121,018 |
| Franchise | | 1,036,597 | | 2,547,626 |
| Total revenue | | 51,676,075 | | 79,072,378 |
| **Costs and expenses** | | | | |
| Cost of sales | | 17,714,630 | | 27,298,315 |
| Route expenses | | 13,158,313 | | 20,273,384 |
| Selling, general, and administrative | | 18,891,070 | | 31,215,939 |
| Acquisition and merger expenses | | 2,775,258 | | 4,091,236 |
| Depreciation and amortization | | 6,084,424 | | 8,792,376 |

| | | |
|---|---|---|
| Total costs and expenses | 58,623,695 | 91,671,250 |
| **Loss from operations** | (6,947,620) | (12,598,872) |
| **Other expense, net** | (3,692,610) | (5,965,729) |
| **Net loss before income taxes** | (10,640,230) | (18,564,601) |
| **Income tax benefit** | 3,513,071 | 8,222,864 |
| **Net loss** | $ (7,127,159) | (10,341,737) |
| **Loss per share** | | |
| Basic and diluted | $ (0.04) | (0.07) |
| **Weighted-average common shares used in the computation of loss per share** | | |
| Basic and diluted | 164,972,640 | 144,097,478 |

### SWISHER HYGIENE INC. AND SUBSIDIARIES
### CONDENSED CONSOLIDATED STATEMENTS OF EQUITY (unaudited)
### FOR THE SIX MONTHS ENDED JUNE 30, 2011

| | Common Stock | | Additional Paid-In | Accumulated | Accumulated Other Comprehensive | Swisher Hygiene Inc. Shareholders' | Non-controlling | Total |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Capital | Deficit | Income | Equity | Interest | Equity |
| **Balance as of December 31, 2010** | 114,015,063 | $ 114,015 | $ 54,725,897 | $ (8,996,759) | $ 73,985 | $ 45,917,138 | $ 110,439 | $ 46,027,577 |
| Shares issued in connection with private placements | 34,119,643 | 34,119 | 191,202,396 | | | 191,236,515 | | 191,236,515 |
| Shares issued in connection with the acquisition of Choice | 8,281,920 | 8,282 | 48,772,244 | | | 48,780,526 | | 48,780,526 |
| Shares issued in connection with acquisitions | 6,310,789 | 6,311 | 44,060,550 | | | 44,066,861 | | 44,066,861 |
| Shares issued in connection with and purchases of property and equipment and to settle liabilities | 394,991 | 395 | 1,182,167 | | | 1,182,562 | | 1,182,562 |
| Shares issued for non-controlling interest | 25,000 | 25 | 103,679 | 6,735 | | 110,439 | (110,439) | — |
| Conversion of promissory note payable | 3,207,459 | 3,207 | 21,191,096 | | | 21,194,303 | | 21,194,303 |
| Stock based compensation | | | 1,762,439 | | | 1,762,439 | | 1,762,439 |
| Exercise of stock options and warrants | 6,205,000 | 6,205 | 3,360,511 | | | 3,366,716 | | 3,366,716 |

36

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Foreign currency translation adjustment | | | | | (45,385) | (45,385) | | | | (45,385) |
| Net loss before purchase of non-controlling interest | | | | (10,348,472) | (10,348,472) | | | | | (10,348,472) |
| **Balance as of June 30, 2011** | 172,559,865 | $ 172,559 | $ 366,360,979 | $ (19,338,496) | $ | 28,600 | 347,223,642 | $ | — | $ 347,223,642 |

## SWISHER HYGIENE INC. AND SUBSIDIARIES
### CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOWS (unaudited)

| | Balance at June 30, 2011 |
|---|---|
| **Cash used in operating activities** | |
| Net loss | $ (10,341,737) ) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
| Depreciation and amortization | 8,792,376 |
| Stock based compensation | 1,762,439 |
| Unrealized loss, net | 5,586,000 |
| Deferred income tax liabilities | (7,427,804) |
| Changes in working capital components: | |
| Accounts receivable | (4,989,429) |
| Inventory | (2,998,400) |
| Other assets and noncurrent assets | (1,056,325) |
| Accounts payable, accrued expenses, and other liabilities | 468,680 |
| Cash used in operating activities | (10,204,200) |
| **Cash used in investing activities** | |
| Purchases of property and equipment | (7,453,258) |
| Acquisitions, net of cash acquired and share issuance costs | (67,717,485) |
| Restricted cash | 5,193,333 |
| Cash used in investing activities | (69,977,410) |
| **Cash provided by financing activities** | |
| Proceeds from private placements, net of issuance costs | 191,236,515 |
| Principal payments on acquired Choice debt | (39,219,160) |
| Proceeds from line of credit, net of issuance costs | 27,496,355 |
| Payoff of lines of credit | (27,779,355) |
| Principal payments on debt | (1,416,712) |
| Proceeds from exercise of stock options and warrants | 3,366,716 |
| Payment of shareholder advance | — |
| Proceeds from advances from shareholders | — |
| Cash provided by financing activities | 153,684,359 |
| Net increase (decrease) in cash and cash equivalents | 73,502,749 |
| Cash and cash equivalents at the beginning of the period | 38,931,738 |
| Cash and cash equivalents at the end of the period | $ 112,434,487 |

Case 3:12-md-02384-GCM   Document 39   Filed 04/24/13   Page 39 of 85

68.     The Second Quarter 10-Q contained the following false and misleading statements regarding EBITDA:

| | Three Months Ended June 30, 2011 | Six Months Ended June 30, 2011 |
|---|---|---|
| Net loss | $ (7,127,159) | $ (10,341,737) |
| Income tax benefit | (3,513,071) | (8,222,864) |
| Depreciation and amortization expense | 6,084,424 | 8,792,376 |
| Interest expense, net | 265,774 | 543,196 |
| Gains on foreign currency | (128,064) | (163,467) |
| Unrealized loss, net | 3,554,900 | 5,586,000 |
| Stock based compensation | 1,097,597 | 1,762,439 |
| Acquisition and merger expenses | 2,775,258 | 4,091,236 |
| Adjusted EBITDA | $ 3,009,659 | $ 2,047,179 |

69.     The Second Quarter 10-Q also reiterated the following false and misleading statements regarding the allocation of the purchase price of Choice, which purportedly was "based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011":

| Net tangible assets acquired: | |
|---|---|
| Cash and cash equivalents | $ 340,870 |
| Receivables | 6,095,801 |
| Inventory | 150,833 |
| Property and equipment | 29,618,377 |
| Customer contracts | 27,840,000 |
| Non-compete agreements | 2,880,000 |
| Deferred income tax assets and other assets | 2,234,452 |
| Accounts payable and accrued expenses | (7,960,210) |
| Capital lease obligations | (3,523,615) |

38

| | | |
|---|---|---:|
| Deferred income tax liabilities | | (12,001,506) |
| | | |
| Total tangible assets acquired | | 45,675,002 |
| Goodwill | | 51,600,792 |
| | | |
| Total purchase price | | 97,275,794 |
| Less: Debt assumed | | (40,941,484) |
| Less: Issuance of shares | | (48,780,526) |
| | | |
| Cash paid (including prepayment penalty of $1,853,784) | $ | 7,553,784 |

70.    The Second Quarter 10-Q also included the following false and misleading statements regarding the Company's internal controls:

**CONTROLS AND PROCEDURES**

We carried out an evaluation, under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, of the effectiveness of our disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) as of June 30, 2011. Based upon that evaluation, our Chief Executive Officer [Berrard] and Chief Financial Officer [Kipp] concluded that ***our disclosure controls and procedures were effective as of June 30, 2011.***

71.    The Second Quarter 10-Q contained, attached to the filing as Exhibits 31.1 and 31.2, respectively, false and misleading certifications executed by Defendants Berrard and Kipp. These certifications stated:

1. I have reviewed this Quarterly Report on Form 10-Q of Swisher Hygiene Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

39

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

72.    The Second Quarter 10-Q also contained, attached to the filing as Exhibit 32.1, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Berrard, which falsely certified that:

    In connection with the Quarterly Report on Form 10-Q of Swisher Hygiene Inc. (the "Company") for the quarter ended June 30, 2011, as filed with the Securities and Exchange Commission (the "Report"), I, Steven R. Berrard, Chief Executive Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as

40

adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

73.     The Second Quarter 10-Q also contained, attached to the filing as Exhibit 32.2, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Kipp, which falsely certified that:

 In connection with the Quarterly Report on Form 10-Q of Swisher Hygiene Inc. (the "Company") for the quarter ended June 30, 2011, as filed with the Securities and Exchange Commission (the "Report"), I, Michael J. Kipp, Senior Vice President, Chief Financial Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

***The November 14, 2011 False and Misleading Statements***

74.     On November 14, 2011, Swisher filed with the SEC a Form 8-K signed by Defendant Berrard.  Attached to the 8-K as Exhibits 99.1. and 99.2, respectively, were a press release entitled "Swisher Hygiene Announces Results for the Three and Nine-Month Periods Ended September 30, 2011" (the "November 14, 2011 Press Release") and a presentation entitled "Swisher Hygiene Third Quarter 2011 Conference Call" (the "November 14, 2011 Presentation").

75.     The November 14, 2011 Press Release falsely announced that:

**Third Quarter 2011 Highlights**

- Total revenue for the three months ended September 30, 2011 increased by 318% to $67.2 million compared to $16.1 million for the same period in 2010, led by a 353% increase in product revenue and a 438% increase in service revenue.

- Organic revenue growth for the quarter was 29% as compared with the same period in 2010.

- Total revenue for the third quarter 2011 was up 30% sequentially from the second quarter of 2011, and up 280% from the fourth quarter of 2010.

- Adjusted EBITDA for the third quarter 2011 was $5.3 million versus an Adjusted EBITDA loss of $1.1 million for the prior-year period and compared to Adjusted EBITDA of $3.0 million for the second quarter of 2011.

- Adjusted EBITDA margin in the third quarter of 2011 was 7.8%, compared to Adjusted EBITDA margins of 5.8% in the second quarter of 2011, -3.5% in the first quarter of 2011 and -6.7% in the third quarter of 2010.

- Revenue outlook for full year 2011 is expected to exceed $220 million, with annualized Run-Rate Revenue now in excess of $320 million.

\* \* \* \* \*

**Third Quarter 2011 Results**

For the three months ended September 30, 2011, Swisher Hygiene reported total revenue of $67.2 million, a 318% increase from $16.1 million in the prior-year period and a 30% sequential increase from the second quarter of 2011. Product revenue increased 353% primarily due to the acquisitions of chemical, linen and waste companies since the end of the third quarter of 2010, and service revenue increased 438%, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, organic revenue increased 29% from the same period of the prior year.

Total costs and expenses for the three months ended September 30, 2011 increased by 256% to $70.6 million, compared to $19.8 million in the prior-year period. Excluding acquisition and merger-related costs of $0.6 million in the three months ended September 30, 2011 and $1.4 million in the prior-year period, total costs and expenses increased 280% compared to the prior-year period.

42

* * * * *

**Nine Month 2011 Results**

For the nine months ended September 30, 2011, Swisher Hygiene reported total revenue of $146.3 million, a 218% increase from $46.0 million in the prior-year period. Product revenue increased 230% primarily due to acquisitions made since August 2010 of 14 franchisees and 58 independent chemical, linen and waste companies, and service revenue increased 330%, largely attributable to the March 2011 acquisition of Choice Environmental Services, Inc. Excluding the impact of acquisitions, organic revenue increased 22% from the prior-year period.

Total costs and expenses for the nine months ended September 30, 2011 increased by 209% to $162.3 million, compared to $52.5 million in the prior-year period.

76.     The November 14, 2011 Press Release also contained the following false statement from Defendant Berrard:

We continued to move in the right direction in the third quarter of 2011, with another quarter of triple-digit revenue growth, a 30% sequential improvement in revenue from the second quarter, as well as reporting over $5 million in positive Adjusted EBITDA. . . . Our Adjusted EBITDA margin rose once again to 7.8% as we are realizing the efficiencies of our new regional operating structure and we are approaching our 2011-2012 target Adjusted EBITDA margin range of 10 to 18%. Organic revenue growth of 29% — a third consecutive quarter of double-digit organic growth — shows once again that our cross-selling and new account initiatives are working.

77.     In addition, the November 14, 2011 Presentation contained the following false and misleading statements:

**Consolidated Highlights**

**Results**

Revenue of $67.2 million; up 318% from the prior year

Organic growth of 28.6%

Current revenue run rate exceeds $320 million

Acquired 22 businesses generating $64 million in revenue . . . .

Achieved Adjusted EBITDA of $5.3 million as compared to a loss of $1.1 million in the same period last year.

* * *

**Profit Drivers**

- Strong operating performance

43

- Strength of our capital structure and liquidity . . . .

\* \* \*

**Performance Versus Plan**

- Triple-digit revenue growth and double-digit organic revenue growth . . . .

\* \* \*

**Consolidated Highlights**

34% improvement in Q3 2011 Adjusted EBITDA compared to Q2 2011 . . . .

Excluding the effect of the mix shift and the introduction of non-service products and redirection of purchases to Daley, Adjusted EBITDA margin would have been 10% versus the reported 7.8%

\* \* \*

**Financial Liquidity**

- $84 million of cash on hand with approximately $200 million in liquidity . . .
- Weighted borrowing average interest rate currently 1.7%
- This, combined with our operating cash flow, leaves us essentially unencumbered to continue our rapid growth and acquisition strategy

\* \* \*

**Consolidated Highlights**

**Accomplishments**

- Annualized run rate revenue in excess of $320 million, up 433%
- Acquired and integrated 69 businesses with $255 million of annualized revenue for a combined purchase price of $288 million . . . .
- Generated double-digit organic growth of 14.6% in the first quarter, 22.4% in the second quarter and 28.6% in the third quarter . . . .
- Maintained a robust capital structure
  - Cash on hand of $84 million
  - Working capital increased by $62 million
  - Debt-to-equity ratio of 15%
  - $200 million of capital currently available for acquisitions and the continued growth of our business

\* \* \*

44

**Financial Results**

- Revenue                                 $67.2 million
    - Up 318% from prior year
    - Up 280% from Q4 2010
    - Organic growth of 28.6%

- Cost of sales                           $25.8 million
    - Up 323% from prior year
    - Excluding acquisitions, Cost of Sales is up 16.4%

* * *

**Financial Results**

- SG&A expense                         $22.6 million
    - Up 201% from prior year
    - Excluding acquisitions, SG&A is up 37.7%

- Adjusted EBITDA                 $5.3 million
    - Compares favorably to $(1.1) million in Q3 2010

- Net loss                                 $3.8 million
    - $(0.02)/share versus $(0.07)/share in Q3 2011

78. Also on November 14, 2011, Swisher filed a Form 10-Q, signed by Defendants Berrard and Kipp, with the SEC, reporting its financial results for the third quarter of 2011 (the "Third Quarter 10-Q"), which provided the following false and misleading statements:

<b>SWISHER HYGIENE INC. AND SUBSIDIARIES<br>CONDENSED CONSOLIDATED BALANCE SHEETS (unaudited)</b>

|  | Balance at Sept. 30, 2011 |
|---|---|
| **ASSETS** | |
| **Current assets** | |
| Cash and cash equivalents | $ 83,785,303 |
| Restricted cash | — |
| Accounts receivable (net of allowance for doubtful accounts of approximately $447,000 at September 30, 2011 and $334,000 at December 31, 2010) | 32,204,831 |
| Inventory | 15,839,729 |
| Other assets | 2,951,952 |
| Total current assets | 134,781,815 |
| Property and equipment, net | 64,516,687 |

45

| | | |
|---|---|---:|
| Goodwill | | 165,992,839 |
| Other intangibles, net | | 81,610,895 |
| Other noncurrent assets | | 5,109,631 |
| | | $ 452,011,867 |

### LIABILITIES AND EQUITY

**Current liabilities**

| | | |
|---|---|---:|
| Accounts payable, accrued expenses, and other current liabilities | $ | 29,904,662 |
| Short term obligations | | 13,346,282 |
| Advances from shareholder | | 2,000,000 |
| Total current liabilities | | 45,250,944 |
| Long term obligations | | 47,899,501 |
| Deferred income tax liabilities | | 4,446,139 |
| Other long term liabilities | | 3,390,995 |
| | | |
| Total noncurrent liabilities | | 55,736,635 |

**Commitments and contingencies**

**Equity**

Swisher Hygiene Inc. stockholders' equity

| | |
|---|---:|
| Preferred stock, par value $0.001, authorized 10,000,000 shares; no shares issued or outstanding at September 30, 2011 and December 31, 2010 | — |
| Common stock, par value $0.001, authorized 600,000,000 shares; 173,864,701 and 114,015,063 shares issued and outstanding at September 30, 2011 and December 31, 2010, respectively | 173,865 |
| Additional paid-in capital | 373,872,794 |
| Accumulated deficit | (23,088,295) |
| Accumulated other comprehensive income | 65,924 |
| Total Swisher Hygiene Inc. stockholders' equity | 351,024,288 |
| Non-controlling interest | — |
| Total equity | 351,024,288 |
| | $ 452,011,867 |

### SWISHER HYGIENE INC. AND SUBSIDIARIES
### CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS (unaudited)

| | Three Months Ended Sept. 30, 2011 | Nine Months Ended Sept. 30, 2011 |
|---|---:|---:|
| **Revenue** | | |
| Product | $ 43,424,055 | $ 86,827,789 |
| Service | 23,347,357 | 56,468,375 |
| Franchise | 433,583 | 2,981,209 |
| Total revenue | 67,204,995 | 146,277,373 |
| **Costs and expenses** | | |
| Cost of sales | 25,817,824 | 53,116,139 |
| Route expenses | 14,618,918 | 34,892,302 |
| Selling, general, and administrative | 22,631,120 | 53,847,059 |
| Acquisition and merger expenses | 644,092 | 4,735,328 |

| | | |
|---|---:|---:|
| Depreciation and amortization | 6,879,607 | 15,671,983 |
| Total costs and expenses | 70,591,561 | 162,262,811 |
| **Loss from operations** | (3,386,566) | (15,985,438) |
| **Other expense, net** | (323,584) | (6,289,313) |
| **Net loss before income taxes** | (3,710,150) | (22,274,751) |
| **Income tax expense (benefit)** | 46,384 | (8,176,480) |
| **Net loss** | $ (3,756,534) | $ (14,098,271) |
| **Loss per share** | | |
| Basic and diluted | $ (0.02) | $ (0.09) |
| **Weighted-average common shares used in the computation of loss per share** | | |
| Basic and diluted | 173,429,586 | 154,025,525 |

**SWISHER HYGIENE INC. AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED STATEMENTS OF EQUITY (unaudited)**
**FOR THE NINE MONTHS ENDED SEPTEMBER 30, 2011**

| | Common Stock | | Additional Paid-In Capital | Accumulated Deficit | Accumulated Other Comprehensive Income | Swisher Hygiene Inc. Shareholders' Equity | Non-Controlling Interst | Total Equity |
|---|---:|---:|---:|---:|---:|---:|---:|---:|
| | Shares | Amount | | | | | | |
| **Balance as of December 31, 2010** | 114,015,063 | $ 114,015 | $ 54,725,897 | $ (8,996,759) | $ 73,985 | $ 45,917,138 | $ 110,439 | $ 46,027,577 |
| Shares issued in connection with private placements | 34,119,643 | 34,120 | 191,202,395 | | | 191,236,515 | | 191,236,515 |
| Shares issued in connection with the acquisition of Choice | 8,281,920 | 8,282 | 48,772,244 | | | 48,780,526 | | 48,780,526 |
| Shares issued in connection with acquisitions | 7,359,435 | 7,359 | 49,614,393 | | | 49,621,752 | | 49,621,752 |
| Shares issued in connection with and purchases of property and equipment and to settle liabilities | 360,782 | 361 | 1,182,166 | | | 1,182,527 | | 1,182,527 |
| Shares issued for non-controlling interest | 25,000 | 25 | 103,679 | 6,735 | | 110,439 | (110,439) | — |
| Conversion of promissory notes payable | 3,497,858 | 3,498 | 22,030,282 | | | 22,033,780 | | 22,033,780 |
| Stock based compensation | | | 2,881,227 | | | 2,881,227 | | 2,881,227 |

| | Shares | Common Stock | Additional Paid-in Capital | Accumulated Deficit | Accumulated Other Comprehensive Income | Total | Non-controlling Interest | Total |
|---|---|---|---|---|---|---|---|---|
| Exercise of stock options and warrants | 6,205,000 | 6,205 | 3,360,511 | | | 3,366,716 | | 3,366,716 |
| Foreign currency translation adjustment | | | | | (8,061) | (8,061) | | (8,061) |
| Net loss before purchase of non-controlling interest | | | | (14,098,271) | | (14,098,271) | | (14,098,271) |
| Balance as of September 30, 2011 | 173,864,701 | $ 173,865 | $ 373,872,794 | $ (23,088,295) | $ 65,924 | $ 351,024,288 | $ — | $ 351,024,288 |

## SWISHER HYGIENE INC. AND SUBSIDIARIES

## CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOWS (unaudited)

| | Nine months ended Sept. 30, 2011 |
|---|---|
| **Cash used in operating activities** | |
| Net loss | $ (14,098,271) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
| Depreciation and amortization | 15,671,983 |
| Stock based compensation | 2,881,227 |
| Loss on fair value measurements, net | 4,766,900 |
| Deferred income tax liabilities | (8,847,698) |
| Changes in working capital components: | |
| Accounts receivable | (9,889,306) |
| Inventory | (3,665,025) |
| Other assets and noncurrent assets | (1,568,845) |
| Accounts payable, accrued expenses, and other liabilities | (2,099,871) |
| Cash used in operating activities | (16,848,906) |
| **Cash used in investing activities** | |
| Purchases of property and equipment | (13,352,225) |
| Acquisitions, net of cash acquired and share issuance costs | (94,929,102) |
| Restricted cash | 5,193,333 |
| Cash used in investing activities | (103,087,994) |
| **Cash provided by financing activities** | |
| Proceeds from private placements, net of issuance costs | 191,334,372 |
| Principal payments on acquired Choice debt | (39,219,160) |
| Proceeds from line of credit and equipment financing loans, net of issuance costs | 41,571,527 |
| Payoff of lines of credit | (27,841,024) |
| Principal payments on debt | (4,421,966) |
| Proceeds from exercise of stock options and warrants | 3,366,716 |
| Payment of shareholder advance | — |

48

| | | |
|---|---|---|
| Proceeds from advances from shareholders | | — |
| Cash provided by financing activities | | 164,790,465 |
| Net increase (decrease) in cash and cash equivalents | | 44,853,565 |
| Cash and cash equivalents at the beginning of the period | | 38,931,738 |
| Cash and cash equivalents at the end of the period | $ | 83,785,303 |

79.     The Third Quarter 10-Q also contained the following false and misleading statements regarding EBITDA:

| | Three Months Ended Sept. 30, 2011 | | Nine Months Ended Sept. 30, 2011 |
|---|---|---|---|
| Net loss | $ (3,756,534) | $ | (14,098,271) |
| Income tax expense (benefit) | 46,384 | | (8,176,480) |
| Depreciation and amortization expense | 6,879,607 | | 15,671,983 |
| Interest expense, net | 807,605 | | 1,420,801 |
| Foreign currency (gain)/loss | 106,079 | | (57,388) |
| Net gain/loss on debt related fair value measurements | (590,100) | | 4,925,900 |
| Stock based compensation | 1,118,788 | | 2,881,227 |
| Acquisition and merger expenses | 644,092 | | 4,735,328 |
| Adjusted EBITDA | $ 5,255,921 | $ | 7,303,100 |

80.     The Third Quarter 10-Q also reiterated the following false and misleading statements regarding the allocation of the purchase price of Choice, which purportedly was "based on the estimated fair value of the acquired assets and assumed liabilities of Choice as of March 1, 2011":

**Net identifiable assets acquired:**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 340,870 |
| Receivables | | 6,095,801 |
| Inventory | | 150,833 |
| Property and equipment | | 29,618,377 |
| Customer contracts | | 27,840,000 |
| Non-compete agreements | | 2,880,000 |
| Deferred income tax assets and other assets | | 2,234,452 |
| Accounts payable and accrued expenses | | (8,347,776) |
| Capital lease obligations | | (3,523,615) |
| Deferred income tax liabilities | | (11,593,837) |
| | | |
| Total identifiable assets acquired | | 45,695,105 |
| Goodwill | | 51,580,689 |
| | | |
| Total purchase price | | 97,275,794 |
| Less: Debt assumed | | (40,941,484) |
| Less: Issuance of shares | | (48,780,526) |
| | | |
| Cash paid (including prepayment penalty of $1,853,784) | $ | 7,553,784 |

81.     The Company's Third Quarter 10-Q also contained, attached to the filing as Exhibits 31.1 and 31.2, respectively, false and misleading certifications executed by Defendants Berrard and Kipp.  These certifications stated:

1. I have reviewed this Quarterly Report on Form 10-Q of Swisher Hygiene Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

82.     The Third Quarter 10-Q also contained, attached to the filing as Exhibit 32.1, a

"Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the

Sarbanes-Oxley Act of 2002" executed by Defendant Berrard, which falsely certified that:

   In connection with the Quarterly Report on Form 10-Q of Swisher Hygiene Inc. (the "Company") for the quarter ended September 30, 2011, as filed with the Securities and Exchange Commission (the "Report"), I, Steven R. Berrard, Chief Executive Officer of the Company, hereby certify, pursuant to 18 U.S.C.

51

Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

83. The Third Quarter 10-Q also contained, attached to the filing as Exhibit 32.2, a "Certification pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" executed by Defendant Kipp, which falsely certified that:

In connection with the Quarterly Report on Form 10-Q of Swisher Hygiene Inc. (the "Company") for the quarter ended September 30, 2011, as filed with the Securities and Exchange Commission (the "Report"), I, Michael J. Kipp, Senior Vice President, Chief Financial Officer of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to the best of my knowledge:

(1) the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

84. On November 14, 2011, the Company also held an earnings call, during which Defendant Berrard made the following false and misleading statements:

Among the highlights for the quarter, were a 318% increase in revenue from the prior year period; a 30% increase in revenue over the second quarter of this year; organic revenue growth of 28.6% as compared to the third quarter of 2010; a current annualized revenue run rate in excess of $320 million; a 275% increase since December 2010; acquisition and integration of 22 businesses; generating $64 million of annual revenue; . . . our reporting adjusted EBITDA of $5.3 million as compared to a loss of $1.1 million for the prior year period. . .

We have now posted three consecutive quarters of triple digit year-over-year revenue growth and double-digit year-over-year organic revenue growth. The goals we communicated to investors during the past year are coming to fruition and our cross-selling initiatives are gaining traction across the company. That can

52

be plainly seen in our third quarter numbers where revenue was up 318% from the prior year period driven by acquisitions and exceptionally strong organic growth of 28.6%. This organic growth is a result of both adding new accounts and increasing the product penetration into existing customers.

*** 

Turning to Slide 6, our adjusted EBITDA margins in the quarter were 7.8%, a 34% improvement from the 5.8% we reported in the second quarter of this year and well ahead of our results in the prior year period. It is also a significant step on our way to the previously announced targets of 10% to 18% for the second half of 2011 and in 2012. . . .

*** 

[W]e continue to strengthen both our capital structure and liquidity position. With over $200 million of available liquidity, our ability to pursue quality, accretive acquisitions and make investments in the continued growth of our business regardless of our stock price has not diminished in the slightest. As of September 30, we had $84 million of cash on hand and we estimated that we have approximately $200 million in liquidity. We finalized the previously announced $62.5 million of credit facilities to be used for future capital expenditures. Our current capital structure as 15% debt and 85% equity and our weighted average borrowing rate is currently at 1.7%. . . .

*** 

During that one-year period [*i.e.,* since Swisher became a public company], we have accomplished the following. Annualized run rate revenue has increased by 433%, up from $60 million to over $320 million today; acquired and integrated 69 businesses generating $255 million of revenue for a combined purchase price of $288 million. . . . We have generated double-digit organic growth of 14.6% in the first quarter, 22.4% in the second quarter, and 28.6% in the third quarter. We've raised $195 million in total equity. . . . Our debt-to-equity ratio is 15%. We have cash on hand of $84 million, have increased our liquidity position from $89 million at the date we went public to approximately $200 million today. . . .

For the first three months ended September 30, 2011, Swisher Hygiene reported total revenue of $67.2 million, a 318% increase from the $16.1 million in the same prior period and a 280% increase from the fourth quarter of 2010. The increase was primarily due to the 202% increase in revenue resulting from acquisitions. Excluding the impact of acquisitions, organic growth in revenue for the three months ended September 30, 2011, increased 28.6% from the same period of the prior year, up substantially from the 22.4% and 14.6% organic growth rates achieved for the two previous quarters. Organic growth was driven primarily by adding new accounts and volume increases from existing customers.

Franchise and other revenues decreased $1.7 million or 80% for the three months ended September 30, 2011, as compared to the same period in 2010 primarily the result of our acquisition of franchisees by the company. Total costs and expenses were $70.6 million versus $19.8 million from the prior year period and included the following. Cost of sales increased 323% to $25.8 million for the three months ended September 30, 2011, as compared to the same period in 2010. This increase includes $18.7 million related to acquisitions. Excluding the impact of these acquisitions, cost of sales increased $1 million or 16.2% to $7.1 million as compared to the same period in 2010 and was 37.6% of related revenue as compared to 34.3% of revenue for the same period in 2010.

*\*\*\**

Slide 14, selling, general and administrative expenses increased 201% to $22.6 million for the three months ended September 30, 2011 as compared to the same period of 2010. This increase includes $12.3 million related to acquisitions made during the three months ended September 30, 2011.

Excluding the impact of these acquisitions selling, general and administrative expenses increased 37.7% to $10.3 million. . . .

*\*\*\**

Adjusted EBITDA was $5.3 million in the third quarter of 2011 versus an adjusted EBITDA loss of $1.1 million in the prior period. . . .

Our net loss for the three months ended September 30, 2011 was $3.8 million or $0.02 per share versus a loss of $4.1 million or $0.07 per share in the prior year period. . . . We've seen triple digit revenue growth in every quarter and are only beginning to tap our potential for future growth. . . .

85.     Each of the foregoing statements regarding Swisher's financial results and internal controls were materially false and misleading when made for the reasons stated below in Section IV. C.

**B.     Swisher Disclosed Improper Accounting and the Need to Restate its Results for the First Three Quarters of 2011**

86.     On March 28, 2012, before the market opened, Swisher issued a press release entitled "Swisher Hygiene Announces it Will File Form 12B-25 for Extension to File Its 2011

54

Annual Report on Form 10-K: Delay in Filing Related to Possible Restatements of First, Second and Third Quarter 2011 Results" (the "March 28, 2012 Press Release") announcing that it would be unable to timely report its 2011 year-end financial results. In part, the press release stated:

> The delay in filing is due to an ongoing internal review by Swisher Hygiene's Audit Committee primarily relating to possible adjustments to (1) the accounting for business acquisitions and (2) the calculation of the allowance of doubtful accounts receivable. On March 21, 2012, the Board of Directors of Swisher Hygiene concluded that the Company's previously issued interim financial statements for the quarterly periods ended June 30, 2011 and September 30, 2011, and the other financial information in the Company's quarterly reports on Form 10-Q for the periods then ended, should no longer be relied upon. Subsequently, on March 27, 2012, the Audit Committee concluded that the Company's previously issued interim financial statements for the quarterly period ended March 31, 2011 should no longer be relied upon. The Company refers to the interim financial statements and the other financial information described above as the "Prior Financial Information."

> As of today's date, the Audit Committee's review is not complete. Nevertheless, the Audit Committee believes material adjustments to the Prior Financial Information may be required and the Company may need to file restatements of its first, second and third quarter financial statements. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $3.6 million in increases to net loss before income taxes for the affected periods.

> The Company is working with its Audit Committee, the Audit Committee's outside experts and the Company's independent auditor to determine the full impact of these potential adjustments on the Prior Financial Information. However, until the review is complete and a final determination is made, the Company cannot provide further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and the Company cannot provide assurance that the adjustments identified to date are representative of the adjustments that will be required when the review is complete. Furthermore, the Company cannot assure that the review will not identify further adjustments that may be required.

> \*     \*     \*

> The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible; however, the Company cannot provide assurance that it will be able to file its Form 10-K within the time period prescribed by Rule 12b-25.

87.     Although it disclosed the need to restate its prior financial results, Defendants attempted to downplay the anticipated extent of the Restatement.  For example, in the March 28, 2012 Press Release, Berrard stated, "[w]e further want to note that the adjustments that are being discussed are *non-cash in nature* and we strongly believe that they will not diminish our financial position or strong capital structure."  (Emphasis added.)  However, this statement was false and misleading because Swisher in fact restated nearly every line item on its financial statements, *including cash on-hand*.

88.     The Company conducted a conference call shortly after releasing the March 28, 2012 Press Release reiterating the statements made in the March 28, 2012 Press Release.

89.     On March 28, 2012, the Company also filed a Current Report on a Form 8-K with the SEC.  In addition to the information disclosed in its March 28, 2012 Press Release, the Form 8-K stated:

> The Audit Committee initiated its review after an informal inquiry by the Company regarding a former employee's concerns with certain of the Company's accounting policies. The Company first initiated the informal inquiry by requesting that both the Audit Committee and the Company's independent auditor look into the matters raised by the former employee. Following this informal inquiry, the Company's senior management and its independent auditor advised the Chairman of the Company's Audit Committee regarding the matters. Subsequently, the Audit Committee determined that an independent review of the matters presented by the former employee should be conducted.  During the course of its independent review, and due in part to the significant number of acquisitions made by the Company, the Audit Committee determined it would be in the best interest of the Company and its stockholders to review the accounting entries relating to each of the 63 acquisitions made by the Company during the year ended December 31, 2011.
>
> In connection with the Audit Committee's independent review, the Company is evaluating its internal control over financial reporting, and particularly controls relating to the estimated allowance for doubtful accounts calculation and controls relating to accounting for business acquisitions, to determine if any significant deficiencies or material weaknesses in such controls caused or contributed to any potential adjustments that may be required.

The Company's Audit Committee and Board of Directors have discussed the matters disclosed in this filing with the Company's independent auditors.

The Company plans to complete its internal review and file its Annual Report on Form 10-K for the year ended December 31, 2011 as promptly as possible. Although the Company will seek to extend the time required to file its Form 10-K in accordance with Rule 12b-25 under the Securities Exchange Act of 1934, as amended, there can be no assurance that the Company will be able to file its Form 10-K within the time period prescribed by Rule 12b-25.

90.     On March 28 and 29, 2012, as the market absorbed the disclosures about Swisher's lack of confidence in and need to restate financials for the previous three quarters and the Company's resultant inability to timely file its Form 10-K with the SEC, Swishers' stock price plummeted.  The Company's shares lost 9.5% of their value on March 28, 2012 and an additional 12% the next day, falling from a closing price of $3.05 on March 27, 2012 to $2.76 on March 28, 2012 then to $2.43 on March 29, 2012, each day representing trading volume above anything seen in nearly four months.  Trading on April 2, 2012 continued this trend, closing at $2.25, representing a total loss of over 26% from the closing price on March 27, 2012.  Thus, the Company lost more than a quarter of its value in less than one week following the announcement that its financial statements for the previous three fiscal quarters could no longer be relied upon.

91.     On April 12, 2012, Swisher issued a press release and filed a Form 8-K, which announced that the filing of its Annual Report on Form 10-K for the year ended December 31, 2011 would be delayed beyond the April 16, 2012 extended due date as a result of the previously disclosed internal review being conducted by the Company's Audit Committee.

92.     Also on April 12, 2012, Swisher released the following statement:

On April 11, 2012, Swisher Hygiene received a letter from NASDAQ indicating that it is not in compliance with the filing requirements for continued listing under NASDAQ Listing Rule 5250(c)(1). The NASDAQ letter notes that Swisher is required to submit a plan to regain compliance with NASDAQ's filing requirements for continued listing within 60 calendar days of the date of the

57

NASDAQ notification letter. Upon acceptance of Swisher's compliance plan, NASDAQ is permitted to grant an extension of up to 180 days from the Form 10-K's initial due date for Swisher Hygiene to regain compliance with NASDAQ's filing requirements for continued listing. Swisher Hygiene intends to submit a compliance plan within the 60 calendar day period. During the process of regaining compliance with NASDAQ, Swisher Hygiene expects that its common stock will continue trading on NASDAQ under the symbol "SWSH".

93.     On May 17, 2012, the Company issued a press release and filed a Form 8-K, which announced that the filing of its Form 10-Q for the quarter ended March 31, 2012 had been delayed beyond the May 15, 2012 due date as a result of the previously disclosed internal review being conducted by Swisher's Audit Committee.   The press release noted the following information relating to the delayed filing:

> On May 17, 2012, Swisher Hygiene announced that the Audit Committee has substantially completed the investigative portion of its internal review and is working with its outside professionals, Swisher Hygiene and Swisher Hygiene's independent auditor to finalize a determination of adjustments to be made for each of the quarterly periods ended March 31, 2011, June 30, 2011, and September 30, 2011. While the amount of any such adjustments cannot be estimated with reasonable certainty at this time, to date, the Audit Committee has preliminarily identified an aggregate of approximately $4.6 million in increases to net loss before income taxes for the affected periods. However, until the adjustments have been fully reviewed and finalized, Swisher Hygiene cannot provide further assurance regarding the complete impact of any adjustments on its results of operations for the affected periods, and Swisher Hygiene cannot provide assurance that the adjustments identified to date are representative of the adjustments that will be required when the adjustments are finalized. Additionally, Swisher Hygiene cannot provide assurance that the review will not identify further adjustments that may be required, including as a result of the independent auditor's review and audit or Swisher Hygiene's further analysis. Swisher Hygiene is working to file the Form 10-K, restated Form 10-Qs for the affected periods and the Form 10-Q for the quarter ended March 31, 2012 as promptly as possible; however, Swisher Hygiene can provide no assurance as to when it will complete these filings.

> In connection with the internal review, on May 14, 2012, Swisher Hygiene's Board of Directors (the "Board"), based on the recommendation of the Audit Committee, determined that Michael Kipp, Swisher Hygiene's Senior Vice President and Chief Financial Officer, *be separated from Swisher Hygiene, effective immediately*. Also, the Board, based on the recommendation of the Audit Committee, determined that *two additional senior accounting personnel be*

58

*separated from Swisher Hygiene, effective immediately*. In making these employment determinations, the Board did not identify any conduct by these employees intended for or resulting in any personal benefit.

Swisher Hygiene has commenced a search process for a new CFO and other accounting staff. During this time, Steven R. Berrard, Swisher Hygiene's President and Chief Executive Officer, will also serve as interim CFO.

On May 15, 2012, Swisher Hygiene received a letter from NASDAQ indicating that it is not in compliance with the filing requirements for continued listing under NASDAQ Listing Rule 5250(c)(1). As previously noted on April 11, 2012, Swisher Hygiene received a non-compliance letter from NASDAQ in conjunction with Swisher Hygiene's inability to timely file its Form 10-K. Pursuant to the April 11, 2012 and May 15, 2012 letters from NASDAQ, Swisher Hygiene is required to submit a plan to regain compliance with NASDAQ's filing requirements for continued listing by June 11, 2012. Upon acceptance of Swisher Hygiene's compliance plan, NASDAQ is permitted to grant an extension of up to 180 days from the Form 10-K's initial due date for Swisher Hygiene to regain compliance with NASDAQ. Swisher Hygiene intends to submit a compliance plan by June 11, 2012. During the process of regaining compliance with NASDAQ, Swisher Hygiene expects that its common stock will continue trading on NASDAQ under the symbol "SWSH."

94.     Subsequent to Swisher's May 17, 2012 announcement regarding the Restatement, Swisher made a number of personnel changes in the CEO and CFO positions. After Swisher's termination of Defendant Kipp, Berrard served as interim CFO until June 12, 2012, when Swisher appointed Brian Krass to the position. Berrard resigned as President and CEO on August 20, 2012, and was replaced by Thomas Byrne, Swisher's current President and CEO. In September 2012, Brian Krass resigned and was replaced by William T. Nanovsky, Swisher's current CFO. In addition, Defendant Cooper, who had been serving as Senior Vice President and Treasurer, was terminated from the Company on November 9, 2012.

95.     Swisher filed its amended 2011 quarterly reports with the SEC on February 20, 2013 and February 21, 2013, followed by its 2011 annual report on Form 10-K a few days later. While working through the Restatement, Swisher announced that it would be unable to timely

59

file its 2012 quarterly reports, which were ultimately delayed until mid-March 2013. Swisher's 2012 annual report on Form 10-K remains outstanding.

96.     On December 12, 2012, March 1, 2013 and March 22, 2013, NASDAQ granted Swisher's requests to remain listed on the exchange, subject to certain criteria set out by NASDAQ.

97.     In total, Swisher's stock has fallen nearly 60%, now trading at approximately $1.25 (the average monthly closing price over the previous month is $1.247) as compared to its closing price of $3.05 on the day before the Restatement was announced, thus causing significant financial harm to Lead Plaintiffs and the other members of the Class. This harm was the result of the false and misleading statements made by Defendants during the Class Period.

## C.     Defendants' Statements During the Class Period Regarding the Company's Financial Results and Internal Controls Were Knowingly or Recklessly False and Misleading When Made

98.     During the Class Period, Defendants either knowingly or recklessly made materially false and misleading statements regarding Swisher's financial results as evidenced by, *inter alia*, Defendants' own admissions and the facts provided by the Confidential Witnesses. Indeed, in the Restatement, Defendants admitted to placing "*undue emphasis on internal anticipated financial results in communications during the financial statement close process*." Though carefully worded, this statement is in essence an admission by management that hitting certain pre-determined numbers (*i.e.,* "internal anticipated financial results") was given paramount importance during the financial close process. Knowing misconduct by Defendants is further demonstrated by information provided by CW #1, a former Swisher employee responsible for the Company's SEC reporting who had regular dealings with Swisher's accounting personnel, and CW #2, a former employee of Swisher who worked in the Company's

60

accounting department and who had responsibility for the Company's internal audit during the time that the Company was preparing the Restatement.

99.     According to CW #1 and CW #2, Swisher was improperly accounting for stock based compensation, conduct which is highly suggestive of knowing misconduct. Specifically, CW #1 and CW #2 stated that the Company improperly back dated stock options, resulting in large, yet unexplained, adjustments to Swisher's stock based compensation expense for the first three quarters of 2011, as described in further detail below. CW #1 also stated that Swisher improperly booked corporate expenses, including expenses associated with a corporate apartment in Charlotte, North Carolina, plane tickets and meal expenses for senior executives and board members, to accounts payable rather than recording those expenses as executive income, practices that violate GAAP, IRS regulations on taxable income and SEC reporting requirements regarding executive compensation.

100.    CW #1 also stated that the former employee who touched off the internal investigation by the audit committee was a high-ranking officer within Swisher's accounting department. After this former employee was terminated, he/she sent a letter to the audit committee stating that "Swisher was booking entries for the purpose of managing earnings." CW #1 corrborated the whistleblower's allegations, explaining that Swisher was, in part, managing its earnings to stay within compliance of its loan covenants.

101.    In addition, CW #2 stated that Joann Viard, the former director of SEC Reporting at Swisher and one of the employees terminated on May 17, 2012, would either email subordinates to change journal entries at the end of quarters or after the quarters closed, or she would make the changes herself, in order to meet internal earnings projections. Viard directly

61

reported to Defendant Kipp. Booking and altering accounting journal entries for the purpose of managing earnings is a strong indicator of fraud.

102. Also, as stated by CW #2, he/she learned from discussions with individuals at companies acquired by Swisher during the Class Period, including Mount Hood and Pro Clean, that Berrard would participate in monthly SG&A calls and demand that these companies report exceedingly high EBITDA and sales numbers – far beyond what the companies had ever achieved in the past. Berrard reportedly would tell these newly acquired companies to "do whatever it takes to hit the numbers." On at least one occasion, Defendant Kipp sent an email to individuals at certain newly acquired companies reiterating the EBITDA numbers that they were expected to report. CW #2 believed that, if these companies did not hit the numbers dictated by Defendants Berrard and Kipp, individuals within Swisher's accounting department would alter journal entries so that the numbers would be what Berrard and Kipp wanted.

103. Moreover, the sheer expansiveness of the Restatement and the black-and-white nature of the accounting errors further support that Defendants either knowingly or recklessly manipulated Swisher's financial results for the purpose of presenting a false picture of the Company's financial results during the Class Period. As discussed in detail below, Defendants' misconduct involved using a surge in acquisitions to portray a flourishing company with robust growth. Contrary to their public statements, however, Defendants either knowingly or recklessly misclassified acquired assets, vastly overstated goodwill and committed a variety of serious accounting errors, which was made possible by the reckless failure to maintain adequate internal controls. Indeed, as Defendants have conceded, the accounting department had an "insufficient number of qualified personnel with the required proficiency to apply purchase accounting

policies in accordance with [GAAP], including with respect to acquisitions," thus further underscoring the reckless nature of Defendants' acquisition spree.[3]

104.    In order to sustain its aggressive rate of acquisitions (more than 60% of which included a stock-based component to the purchase price), Defendants manipulated the Company's financial results, thereby inflating Swisher's stock price and thus giving Defendants an artificially inflated currency to use in acquiring target companies.

***Defendants Cooked The Books To Inflate Swisher's Stock Price***
***To Use As Currency In Acquisitions***

105.    Swisher's corporate culture was built on achieving internal anticipated financial results.   In order to portray a company capable of hitting its lofty financial goals, Swisher artificially inflated its balance sheet by acquiring companies and used its stock – which was artificially inflated by Swisher's accounting chicanery – as currency to acquire many of these companies in 2011.  In fact, Swisher acquired 63 companies during the year ended December 31, 2011, on the course to earning the Wall Street Journal's title of "Most Acquisitive Company."[4] Defendants knowingly or recklessly followed this course in an attempt to create an illusion of growth and, eventually, profitability.   As discussed in more detail below, Swisher lacked a mergers and acquisition plan and the systems necessary to integrate the financial statements of the acquired companies.   Moreover, as conceded in the Restatement, Swisher lacked qualified accounting personnel, including personnel qualified to account for acquisitions.   Defendants' knowing or reckless misconduct is made evident by the resulting accounting improprieties associated with Swisher's acquisitions.

---

[3] Specifically, Defendants violated Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 805, Business Combination.

[4] *Meet the Most Acquisitive Company in America*, The Wall Street Journal, Dec. 5, 2011, http://blogs.wsj.com/deals/2011/12/05/meet-the-most-acquisitive-company-in-america/.

63

106. Instead of valuing the assets it acquired, Swisher simply booked enormous amounts of assumed value to goodwill. Under normal circumstances, a company books an increase to goodwill when an acquired asset has intangible value above its book value. In this case, however, Swisher simply never valued the acquired assets before recording the large increases to goodwill. It is clear that Defendants intended to use baseless additions to goodwill to inflate the Company's balance sheet. For example, in one instance, Swisher went so far as to book a large, acquisition-related expense (incurred as the result of prepaying a debt obligation) to goodwill instead of incurring it properly as an expense.

107. Swisher's acquisition of Choice demonstrates, in a nutshell, Defendants' misconduct with regard to acquisitions. In conjunction with the Choice acquisition (Swisher's largest in 2011), Swisher issued approximately 8.3 million shares of its common stock valued at approximately $49 million to the former shareholders of Choice and assumed approximately $40.9 million of Choice's debt. In reporting the assets acquired from Choice, Swisher valued Total Assets Acquired at $47.4 million and registered goodwill related to the acquisition of $49.8 million.

108. Like the other portions of the Restatement, Swisher was forced to restate almost every item on its post-combination financials, including the financials that were issued on March 31, 2011 in the S-1 referenced in paragraph 38, that pertain to the Choice Acquisition:

**Swisher Acquisition Restatement Analysis**
*"Restatement of Net Assets Acquired"*

| _Quarter Ended March 31, 2011_ | Choice Acquisition | | |
| --- | --- | --- | --- |
| | As Reported | Restatement Adjustments | As Restated |
| **Net assets acquired** | | | |
| Cash and cash equivalence | $341 | $(82) | $259 |
| Accounts receivable | 6,096 | 329 | 6,425 |
| Inventory | 151 | - | 151 |

64

| | | | |
|---|---:|---:|---:|
| Property and equipment | 29,618 | (135) | 29,483 |
| Intangible assets | 30,721 | 11,579 | 42,300 |
| Other assets | 2,234 | (5) | 2,229 |
| Accounts payable and accrued expenses | (6,221) | (1,358) | (7,579) |
| Long-term obligations | (3,524) | 1,015 | (2,509) |
| Deferred income tax liabilities | (12,002) | (4,744) | (16,746) |
| **Total assets acquired** | 47,414 | 6,599 | 54,013 |
| Goodwill | 49,862 | (8,099) | 41,763 |
| **Total purchase price - Choice Acquisition** | 97,276 | (1,500) | 95,776 |

109.     These adjustments included valuation of assets previously booked to goodwill.  In what appears to be a stroke of good luck, Swisher found an additional $11.6 million in intangible assets consisting "of entries to record the estimated fair value of trademarks and permits of $9.3 million, to increase the estimated fair value of non-compete agreements by $3.7 million and to reduce the estimated fair value of customer contracts and relationships by $1.4 million."  The Restatement does not explain, in any detail, what trademarks, permits or non-compete agreements Swisher acquired in the Choice acquisition nor does it explain why these assets were not properly accounted for at the time of the acquisition.

110.     Due to the Company's failure to either properly value these assets at the time of purchase or when it issued its post-combination financial statement, there was no basis upon which the Company could assess the reasonableness of the purchase price.  Therefore, the Company acquired Choice with reckless disregard for whether it was overpaying for acquired intangible assets.  Defendants therefore knew that their statements regarding the Choice acquisition were either false, or at a minimum, recklessly disregarded that their statements had no basis in fact.

111.     The adjustments to the other 62 acquisitions from 2011 similarly indicate a failure to properly value or account for assets at the time of acquisition.  For example, for all other acquisitions made during the nine months ended September 30, 2011, Swisher was forced to

restate intangible assets by a total of $10.629 million and goodwill by a total of $8.139 million. Fortunately for Defendants, the Company was able to find some value in the intangible assets acquired in the acquisition of Choice and other companies. Had Swisher not fortuitously found value in these assets, the Restatement adjustments and quarterly net losses would have been much larger. For example, in the third quarter of 2011, Swisher recorded income of $4.4 million as a gain on a bargain purchase related to the single-bidder acquisition of a chemical manufacturer in loan forbearance. Without this one-time gain, Swisher's net loss would have nearly doubled as a result of the Restatement.

112.    In addition to recklessly classifying acquired, unvalued intangible assets as goodwill, Swisher further used its goodwill account to inflate its balance sheet by improperly recording other items as goodwill. For example, Swisher booked a $1.5 million Loss on Extinguishment of Debt to goodwill – i.e. Swisher reported a one-time expense as an acquired asset. However, because this loss constituted a debt repayment penalty, it should have been incurred as an expense when Swisher issued its post-combination financial statements in accordance with Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 805-20-25-2. Instead, Swisher improperly carried this expense as an asset on its balance sheet until it was forced to restate. Not only does such improper accounting violate clear and basic GAAP principles, it is facially unreasonable and, at a minimum, clearly evidences recklessness.

113.    According to CW #2, Swisher's internal accounting controls and personnel were so deficient that the Company had not reconciled its balance sheets during many months of 2011. Not only was Swisher unable to reconcile its balance sheets, it was unable to consolidate all of the financial statements from all of its acquisitions during the Class Period and had no idea of the

66

true financial results of the Company. More specifically, CW #2 stated that Swisher lacked a mergers and acquisition plan during the Class Period and did not have the capability within its systems to effectively consolidate the financial statements from its numerous acquisitions into one ledger.

114. The foregoing evidence strongly suggests that Defendants knowingly or recklessly used acquisitions as a scheme to create an illusion of growth and to defraud investors and either knew, or recklessly disregarded, that the Company lacked the ability and internal controls to properly account for these acquisitions. As part of this scheme, Defendants manipulated the Company's financial results in order to inflate the price of the Company's stock which it used as currency to acquire even more companies. Notably, 39 of Swisher's acquisitions (in 2011 alone) involved a stock-based component to the purchase price. This conclusion – that Defendants fraudulently used acquisitions to create the illusion of growth – is bolstered by the egregiousness of the accounting errors at the entity level that were reported in the Restatement.

### *The Restatement Reflects Basic Black and White Accounting Errors that are Highly Suggestive of Fraud*

115. The Restatement not only evidences improper accounting for acquisitions, it is fraught with blatant accounting errors that are highly suggestive of fraud. Unlike the Company's original disclosure that the adjustments in the Restatement were primarily due to non-cash adjustments, the Restatement impacted almost every balance sheet and income statement category, including cash. More specifically, in the Restatement, Swisher adjusted cash by $82,000, $34,000 and $45,000 for the quarters ended March 31, 2011, June 30, 2011, and September 30, 2011, respectively. A company's cash is generally confirmed using bank confirmations; therefore, it is inconceivable for a publicly-traded company to be unable to

67

determine how much cash it has on hand and the Company has in fact admitted that it lacked sufficient transactional level controls to properly maintain its cash accounts.

116.    In addition to improperly accounting for cash, it appears that the Company also erroneously accounted for inventory as PP&E ("Property Plant and Equipment"), which led to a $500,000 adjustment for the first quarter of 2011 alone.  This error is especially shocking given the nature of the Company's business.  For Swisher, inventory would include the products that it sells to its customers, such as chemical cleaners, paper products and dispensing equipment.  In contrast, PP&E includes fixed assets, such as land, buildings and computers.  The two categories of assets are difficult to confuse and any reallocation between the two, at a minimum, raises serious red flags about the adequacy of the Company's internal controls.  Furthermore, Swisher fails to explain a $100,000 adjustment to inventory in the third quarter of 2011, further evidencing that, as it admitted, Swisher did not have sufficient internal controls to ensure proper tracking of its inventory.

117.    Similarly, Swisher made large adjustments to the categories SG&A expense ("Selling, General and Administrative expense") and accounts payable, including a $2.3 million increase to SG&A expense for the first quarter of 2011.  This adjustment primarily consisted of entries to accrue additional costs and acquisition related expenses, an increase in bad debt expense and an increase in professional fees.  Astonishingly, the professional fees that were the subject of this particular adjustment were originally recorded as paid-in capital, which is an account under shareholders' equity that serves to measure investors' wealth within the Company. Recording a then-current expense as paid-in capital is a blatant attempt to reduce expenses and artificially increase shareholders' equity and would not occur without, at a minimum, woefully inadequate internal controls.

68

118.     As noted above, CW #1 and CW #2 have also provided information indicating that Swisher improperly accounted for stock option compensation expense by back dating stock options.  CW #2 explained that, as part of the audit committee's investigation, the accounting consulting firm Monaghan Group was brought in to reconcile the Company's balance sheets, which had not been reconciled in months, and in the process uncovered the improper back dating of stock options.  According to CW #1, the adjustments had to be manually calculated because the Company's human resources department, rather than the accounting department, had managed the stock options process.  Although the Restatement includes adjustments to Stock Based Compensation for the first three quarters of 2011, these adjustments are not explained, beyond an admission (discussed below) that there were deficiencies with respect to the controls designed to ensure "accurate recording of . . . stock based compensation expense."

119.     These were not the only instances where the Company failed to properly account for expenses.  As part of the Restatement, Swisher further adjusted SG&A and accounts payable to record professional fees in the second quarter of 2011 and expenses related to severance payments in the third quarter of 2011.  There is no legitimate accounting rationale that would support Swisher's failure to record these fees and expenses when they were paid.

120.     In addition to the foregoing black-and-white accounting errors, it appears that Swisher's system of internal controls was so deficient that it did not catch large errors in simple mathematical calculations (i.e., basic multiplication and division errors).  For example, Swisher erred in its calculation of depreciation expense in all three restatement quarters, resulting in adjustments to deprecation expenses in the amounts of $400,000, $300,000 and $300,000, respectively for each of the quarters.  Notably, at the time that Swisher corrected for these computation errors, Swisher also modified the useful lives of certain fixed assets as part of the

69

Restatement. These changes to useful life, which lengthened the life of assets and therefore lowered depreciation expenses during the Restatement period, muted the true effect of the adjustments that were necessitated by the "computational errors" discussed above.

121. Finally, it is noteworthy that the Restatement contains a number of unexplained adjustments. For example, there remain unexplained adjustments to SG&A totaling $1 million ($800,000, $100,000, and $100,000 in each of the respective quarters of the Restatement period). There are similar unexplained adjustments to accounts payable, depreciation expense, cash and other accounts in the Restatement. Assuming Swisher was able to gather sufficient support to accurately determine the amount of each adjustment in the Restatement, such supporting information should have been disclosed to shareholders. Its failure to do so suggests a Company still mired by the egregiousness of its past accounting errors. As discussed below, these errors were made possible by Defendants' knowing or reckless disregard for adequate internal controls.

### Defendants Berrard, Kipp and Cooper Recklessly Disregarded Swisher's Lack of Internal Controls

122. Swisher has admitted that "In connection with [this] filing [], management concluded that our disclosure controls and procedures were not effective [during the Class Period] because of the deficiencies in our internal control over financial reporting." In the Restatement, Swisher discusses these shortcomings in some detail, disclosing that:

- At the entity level, Swisher admits that it placed "*undue emphasis on internal anticipated financial results in communications during the financial statement close process.*"

- With regard to financial reporting, Swisher admits that it lacked "control over the financial reporting close process allowing for *override of entity-level controls resulting in a number of journal entries having either insufficient or no support.*"

70

- With regard to the financial statement review process, Swisher disclosed insurmountable shortcomings, including *deficient control in the preparation, review and approval of account reconciliations*.

- Within its accounting department, Swisher admits that it had an "*insufficient number of qualified accounting personnel with the required proficiency to apply purchase accounting policies in accordance with [GAAP], including with respect to acquisitions.*"

- With regard to transactional level controls, Swisher admits that the controls in place *did not ensure proper tracking of fixed assets or inventory, maintenance of cash accounts, or accurate reporting of stock based compensation expense*.

- With regard to IT systems, Swisher admits it had *deficient controls to prevent inaccurate system generated reports*, such as control over the input, calculation, and review of spreadsheet software, user access rights to the software, and changes in and testing to system software and infrastructure technology.

123. CW #2 confirmed that Swisher lacked the basic requirements necessary for even rudimentary internal controls. Swisher had no written policies regarding accounting for accounts receivable, inventory, acquisitions, goodwill and a host of other routine and basic accounting functions that are necessary to establish and support adequate internal controls. Swisher also had no policy in place to prevent journal entries from being changed or modified after the financial statement period at issue closed.

124. According to CW #2, Swisher's senior management, including Defendants Berrard and Kipp, did not promote an environment for good internal accounting controls. Many of the Company's accounting personnel were either personal friends with Berrard or the relatives of Berrard's friends, and lacked proper accounting training. According to CW #2, there was a lack of internal controls "from the top down," as evidenced by the fact that Swisher had no merger and acquisitions plan in place with regard to how to account for the 63 acquisitions made during 2011.

125.    The pervasiveness of Defendants' failure to implement and maintain adequate internal controls is made manifest by the number of gross accounting defects uncovered during the Restatement process, including but not limited to:  booking items to improper accounts (e.g., inventory booked as PP&E, professional fees booked as paid-in capital, and loss on extinguishment of debt booked as goodwill); frequent computational errors (in the third quarter of 2011 alone, errors affected Other Assets, PP&E, depreciation expense and SG&A expenses); and, despite its breakneck rate of acquisitions, a reckless disregard for the proper accounting of business acquisitions that was so egregious, nearly every category in the Company's post-combination financial statements had to be restated.

126.    It is also significant that – despite the nearly year-long period during which Swisher had an opportunity to correct its mistakes – the Restatement still includes a number of unexplained adjustments.   (As previously discussed, Swisher has failed to provide support for certain adjustments to SG&A, accounts payable, depreciation expense, cash and other accounts in the Restatement.)   Swisher's failure to provide a full explanation of all Restatement adjustments further underscores the utter lack of internal controls within the Company.

127.    Thus, Defendants Berrard, Kipp and Cooper either knew, or recklessly disregarded, that Swisher's internal controls were woefully inadequate and insufficient.  Swisher lacked the most basic and fundamental internal controls and accounting policies, such that it is inconceivable that Defendants could have honestly certified during the Class Period that Swisher's internal financial controls were adequate.

128.    As a result, Swisher did not have adequate internal financial controls and Defendants either knew this, or in reckless disregard for the truth, certified that Swisher did have adequate internal controls.

72

*The Restatement Reflects Adjustments to Nearly Every Line Item*

129.    As a result of Defendants' pervasive misconduct, Swisher failed to properly account for all but a small handful of line items on its financial statements during the first three quarters of 2011.  For example the following table shows the adjustments made by Swisher in the Restatement for the quarter ending March 31, 2011:

| Swisher Restatement | | | |
|---|---|---|---|
| *(in thousands)* | | **March 31, 2011** | |
| | **As Reported** | **Adjustments** | **As Restated** |
| **ASSETS** | | | |
| **Current assets** | | | |
| Cash and cash equivalents | 105,070 | (82) | 104,988 |
| Accounts Receivable, net | 14,894 | (77) | 14,817 |
| Inventory | 3,765 | 506 | 4,271 |
| Other assets | 2,798 | (303) | 2,495 |
| **Total current assets** | 126,527 | 44 | 126,571 |
| Property and equipment, net | 44,202 | (1,152) | 43,050 |
| Goodwill | 87,878 | (9,222) | 78,656 |
| Other intangibles, net | 44,076 | 12,895 | 56,971 |
| Other noncurrent assets | 3,737 | 371 | 4,108 |
| **Total assets** | 306,420 | 2,936 | 309,356 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | |
| **Current liabilities** | | | |
| Accounts payable and accrued expenses | 18,025 | 1,001 | 19,026 |
| Long-term debt and obligations due within one year | 19,734 | 15 | 19,749 |
| Advances from shareholders | 2,000 | - | 2,000 |
| **Total current liabilities** | 39,759 | 1,016 | 40,775 |
| Long-term debt and obligations | 37,527 | (650) | 36,877 |
| Deferred income tax liabilities | 9,747 | 3,925 | 13,672 |
| Other long-term liabilities | 3,555 | 1,115 | 4,670 |
| **Total non-current liabilities** | 50,829 | 4,390 | 55,219 |
| | | | |
| **Commitments and contingencies** | | | |
| | | | |
| **Stockholders' equity** | | | |
| **Swisher Hygiene Inc. Stockholders' equity** | | | |
| Common stock | 147 | 1 | 148 |
| Additional paid-in capital | 227,569 | 213 | 227,782 |
| Accumulated deficit | (12,204) | (2,784) | (14,988) |

73

| | | | |
|---|---|---|---|
| Accumulated other comprehensive income | 216 | 100 | 316 |
| Total Swisher Hygiene Inc. stockholders' equity | 215,728 | (2,470) | 213,258 |
| Non-controlling interest | 104 | - | 104 |
| **Total stockholders' equity** | 215,832 | (2,470) | 213,362 |
| **Total liabilities and stockholders' equity** | 306,420 | 2,936 | 309,356 |
| | | | |
| **Condensed Consolidated Statement of Operations** | | | |
| **Revenue** | | | |
| Products | 15,427 | - | 15,427 |
| Services | 10,458 | 7 | 10,465 |
| Franchise and other | 1,511 | (118) | 1,393 |
| Total revenue | 27,396 | (111) | 27,285 |
| | | | |
| **Costs and expenses** | | | |
| Cost of sales | 9,584 | 424 | 10,008 |
| Route expenses | 7,115 | (16) | 7,099 |
| Selling, general, and administrative | 12,325 | 2,334 | 14,659 |
| Acquisition and merger expenses | 1,316 | (52) | 1,264 |
| Depreciation and amortization | 2,708 | 187 | 2,895 |
| Debt repayment penalty | - | 1,500 | 1,500 |
| Gain on bargain purchase | | | |
| Total costs and expenses | 33,048 | 4,377 | 37,425 |
| **Loss from operations** | (5,652) | (4,488) | (10,140) |
| Other expenses, net | (2,273) | 19 | (2,254) |
| **Net loss before income taxes** | (7,925) | (4,469) | (12,394) |
| Income tax benefit | 4,710 | 1,686 | 6,396 |
| **Net Loss** | (3,215) | (2,783) | (5,998) |
| | | | |
| **Loss per share** | | | |
| Basic and diluted | (0.03) | (0.02) | (0.05) |

130.    Similarly, the following table shows the adjustments made by Swisher in the Restatement for the quarter ending June 30, 2011:

| Swisher Restatement | | | |
|---|---|---|---|
| *(in thousands)* | | **June 30, 2011** | |
| | **As Reported** | **Adjustments** | **As Restated** |
| **ASSETS** | | | |
| **Current assets** | | | |
| Cash and cash equivalents | 112,434 | 34 | 112,468 |
| Accounts Receivable, net | 23,986 | (735) | 23,251 |
| Inventory | 10,849 | (478) | 10,371 |
| Other assets | 2,328 | 86 | 2,414 |

74

| | | | |
|---|---|---|---|
| **Total current assets** | 149,597 | (1,093) | 148,504 |
| Property and equipment, net | 58,517 | 47 | 58,564 |
| Goodwill | 139,637 | (16,045) | 123,592 |
| Other intangibles, net | 74,377 | 16,863 | 91,240 |
| Other noncurrent assets | 4,710 | (161) | 4,549 |
| **Total assets** | 426,838 | (389) | 426,449 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | |
| **Current liabilities** | | | |
| Accounts payable and accrued expenses | 26,798 | 627 | 27,425 |
| Long-term debt and obligations due within one year | 9,350 | 490 | 9,840 |
| Advances from shareholders | 2,000 | - | 2,000 |
| **Total current liabilities** | 38,148 | 1,117 | 39,265 |
| Long-term debt and obligations | 31,172 | (1,342) | 29,830 |
| Deferred income tax liabilities | 6,274 | 3,423 | 9,697 |
| Other long-term liabilities | 4,020 | 79 | 4,099 |
| **Total non-current liabilities** | 41,466 | 2,160 | 43,626 |
| | | | |
| **Commitments and contingencies** | | | |
| | | | |
| **Stockholders' equity** | | | |
| **Swisher Hygiene Inc. Stockholders' equity** | | | |
| Common stock | 173 | - | 173 |
| Additional paid-in capital | 366,361 | 35 | 366,396 |
| Accumulated deficit | (19,339) | (3,747) | (23,086) |
| Accumulated other comprehensive income | 29 | 17 | 46 |
| Total Swisher Hygiene Inc. stockholders' equity | 347,224 | (3,695) | 343,529 |
| Non-controlling interest | - | 29 | 29 |
| **Total stockholders' equity** | 347,224 | (3,666) | 343,558 |
| **Total liabilities and stockholders' equity** | 426,838 | (389) | 426,449 |
| | | | |
| **Condensed Consolidated Statement of Operations** | | | |
| | | | |
| **Revenue** | | | |
| Products | 27,977 | - | 27,977 |
| Services | 22,663 | (1) | 22,662 |
| Franchise and other | 1,036 | 240 | 1,276 |
| Total revenue | 51,676 | 239 | 51,915 |
| | | | |
| **Costs and expenses** | | | |
| Cost of sales | 17,715 | 622 | 18,337 |
| Route expenses | 13,158 | 413 | 13,571 |
| Selling, general, and administrative | 18,891 | 1,316 | 20,207 |
| Acquisition and merger expenses | 2,775 | (41) | 2,734 |

75

| | As Reported | Adjustments | As Restated |
|---|---|---|---|
| Depreciation and amortization | 6,084 | (731) | 5,353 |
| Debt repayment penalty | - | - | - |
| Gain on bargain purchase | | | |
| Total costs and expenses | 58,623 | 1,579 | 60,202 |
| **Loss from operations** | (6,947) | (1,340) | (8,287) |
| Other expenses, net | (3,693) | (68) | (3,761) |
| **Net loss before income taxes** | (10,640) | (1,408) | (12,048) |
| Income tax benefit | 3,513 | 442 | 3,955 |
| **Net Loss** | (7,127) | (966) | (8,093) |
| | | | |
| **Loss per share** | | | |
| Basic and diluted | (0.04) | (0.01) | (0.05) |

131.  Defendants' continuous pattern and course of misconduct is further evidenced by the adjustments made for the quarter ending September 30, 2011:

| Swisher Restatement Analysis | | | |
|---|---|---|---|
| *(in thousands)* | **September 30, 2011** | | |
| | **As Reported** | **Adjustments** | **As Restated** |
| **ASSETS** | | | |
| **Current assets** | | | |
| Cash and cash equivalents | 83,785 | 45 | 83,830 |
| Accounts Receivable, net | 32,205 | (1,681) | 30,524 |
| Inventory | 15,840 | (426) | 15,414 |
| Other assets | 2,952 | (517) | 2,435 |
| **Total current assets** | 134,782 | (2,579) | 132,203 |
| Property and equipment, net | 64,517 | 537 | 65,054 |
| Goodwill | 165,993 | (16,460) | 149,533 |
| Other intangibles, net | 81,611 | 22,578 | 104,189 |
| Other noncurrent assets | 5,109 | (215) | 4,894 |
| **Total assets** | 452,012 | 3,861 | 455,873 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | |
| **Current liabilities** | | | |
| Accounts payable and accrued expenses | 29,905 | 151 | 30,056 |
| Long-term debt and obligations due within one year | 13,346 | 537 | 13,883 |
| Advances from shareholders | 2,000 | - | 2,000 |
| **Total current liabilities** | 45,251 | 688 | 45,939 |
| Long-term debt and obligations | 47,900 | (1,398) | 46,502 |
| Deferred income tax liabilities | 4,446 | 6,816 | 11,262 |
| Other long-term liabilities | 3,391 | 90 | 3,481 |
| **Total non-current liabilities** | 55,737 | 5,508 | 61,245 |
| | | | |

Case 3:12-md-02384-GCM   Document 39   Filed 04/24/13   Page 78 of 85

| | | | |
|---|---|---|---|
| **Commitments and contingencies** | | | |
| | | | |
| **Stockholders' equity** | | | |
| **Swisher Hygiene Inc. Stockholders' equity** | | | |
| Common stock | 174 | - | 174 |
| Additional paid-in capital | 373,873 | 52 | 373,925 |
| Accumulated deficit | (23,088) | (1,861) | (24,949) |
| Accumulated other comprehensive income | 65 | (549) | (484) |
| Total Swisher Hygiene Inc. stockholders' equity | 351,024 | (2,358) | 348,666 |
| Non-controlling interest | - | 23 | 23 |
| **Total stockholders' equity** | 351,024 | (2,335) | 348,689 |
| **Total liabilities and stockholders' equity** | 452,012 | 3,861 | 455,873 |
| | | | |
| **Condensed Consolidated Statement of Operations** | | | |
| **Revenue** | | | |
| Products | 43,424 | - | 43,424 |
| Services | 23,347 | (1) | 23,346 |
| Franchise and other | 434 | 204 | 638 |
| Total revenue | 67,205 | 203 | 67,408 |
| | | | |
| **Costs and expenses** | | | |
| Cost of sales | 25,818 | 846 | 26,664 |
| Route expenses | 14,619 | 678 | 15,297 |
| Selling, general, and administrative | 22,631 | 2,060 | 24,691 |
| Acquisition and merger expenses | 644 | - | 644 |
| Depreciation and amortization | 6,880 | (109) | 6,771 |
| Debt repayment penalty | - | - | - |
| Gain on bargain purchase | - | (4,359) | (4,359) |
| Total costs and expenses | 70,592 | (884) | 69,708 |
| **Loss from operations** | (3,387) | 1,087 | (2,300) |
| Other expenses, net | (323) | 18 | (305) |
| **Net loss before income taxes** | (3,710) | 1,105 | (2,605) |
| Income tax benefit | (46) | 781 | 735 |
| **Net Loss** | (3,756) | 1,886 | (1,870) |
| | | | |
| **Loss per share** | | | |
| Basic and diluted | (0.02) | 0.01 | (0.01) |

132.    The sheer expansiveness of the Restatement, which reflects adjustments to nearly every line item on Swisher's financial statements, indicates, at a minimum, a reckless disregard for proper accounting procedures and internal controls.

133. In sum, Swisher's admissions as to the scope of its internal control deficiencies, the egregiousness of the resulting accounting errors, and the expansiveness of the Restatement indicate that Defendants knowingly or recklessly made false and misleading statements, and omitted to disclose material information, regarding the Company's financial health and system of internal controls during the Class Period, causing significant financial harm to Lead Plaintiffs and the other members of the Class.

## VII.   LOSS CAUSATION / ECONOMIC LOSS

134. On March 28 and 29, 2012, as the market absorbed the disclosures about Swisher's lack of confidence in and need to restate financials for the previous three quarters and the Company's resultant inability to timely file its Form 10-K with the SEC, Swishers' stock price plummeted. The Company's shares lost 9.5% of their value on March 28 and an additional 12% the next day, falling from a closing price of $3.05 on March 27 to $2.76 on March 28, then to $2.43 on March 29, each day representing trading volume above anything seen in nearly four months. On April 2, 2012 (less than one week after the Restatement was announced), Swisher's common share price closed at $2.25. This represented a loss of over 26% from the closing price on March 27, 2012, the day before the Company publicly announced that its financial statements for the previous three fiscal quarters could no longer be relied upon.

135. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Swisher's accounting misconduct and its lack of operational and financial controls was revealed, the Company's common stock declined as the prior artificial inflation no longer propped up its stock price. The decline in Swisher's common stock price was

78

a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Lead Plaintiffs and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Lead Plaintiffs and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's common stock price and the subsequent significant decline in the value of the Company's common stock when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

136. At all relevant times, Defendants' materially false and misleading statements and omissions alleged herein directly or proximately caused the damages suffered by Lead Plaintiffs and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Swisher's business, operations, controls and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Swisher's common stock price to be artificially inflated. Lead Plaintiffs and other Class members purchased or otherwise acquired Swisher's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## VIII.   <u>NO SAFE HARBOR</u>

137. The statutory safe harbor under the Private Securities Litigation Reform Act of 1995, which applies to forward-looking statements under certain circumstances, does not apply to any of the allegedly false and misleading statements plead in this complaint. The statements

alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements plead herein, Defendants are liable for those false forward-looking statements because, at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Swisher who knew that those statements were false, misleading or omitted necessary information when they were made.

## IX.   CLAIMS

### COUNT I
### (Against All Defendants)
### Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5

138.   Lead Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

139.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

140.   During the Class Period, Defendants, singly and in concert, directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and course of business which operated as fraud and deceit upon Lead Plaintiffs and the other members of the Class, and failed to disclose

material information necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to Lead Plaintiffs and the other members of the Class. The purpose and effect of said scheme, plan and unlawful course of conduct was, among other things, to induce Lead Plaintiffs and the other members of the Class to purchase Swisher's common stock during the Class Period at artificially inflated prices.

141. As a result of the failure to disclose material facts, the information Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of Swisher's common stock was artificially inflated during the Class Period. In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by Defendants, Lead Plaintiffs and other members of the Class relied, to their detriment, on the integrity of the market price of Swisher's common stock in purchasing shares of the Company. Had Lead Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said shares or would not have purchased or acquired them at the artificially inflated prices.

142. Lead Plaintiffs and other members of the Class have suffered damages as a result of the unlawful conduct alleged herein in an amount to be proved at trial.

143. By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made false and misleading statements and failed to disclose material information; or (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Lead Plaintiffs and the other members of the Class in connection with their purchases of Swisher's common stock during the Class Period.

## COUNT II
### (Against the Individual Defendants)
### Violations of Section 20(a) of the Exchange Act

144. Lead Plaintiffs repeat and re-allege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

145. Individual Defendants, by virtue of their positions within the Company as Senior Officers and/or Directors, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

146. Individual Defendants had the power and influence – and exercised such power and influence to cause Swisher to engage in the unlawful conduct and practices complained of herein.

147. By reason of the conduct alleged in Count I of this Complaint, Individual Defendants are jointly and severally liable to the same extent as the Company for the aforesaid unlawful conduct, and are liable to Lead Plaintiffs and to the other members of the Class for the damages which they suffered in connection with their purchases or acquisitions of Swisher common stock during the Class Period.

## X. PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on their own behalf and on behalf of the Class, pray for judgment as follows:

(a) Determining this action to be a proper class action and certifying Lead Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Lead Plaintiffs and the other members of the Class against Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

(c)     Awarding Lead Plaintiffs the fees and expenses incurred in this action including reasonable allowance of fees for Lead Plaintiffs' attorneys and experts;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Granting such other and further relief as the Court may deem just and proper.

## XI.    JURY TRIAL DEMANDED

Lead Plaintiffs hereby demand a trial by jury.


Dated:  April 24, 2013                                 Respectfully submitted,

                                                       /s/Gary W. Jackson

                                                       **JACKSON & McGEE LLP**
                                                       Gary W. Jackson
                                                       225 E. Worthington Ave, Suite 200
                                                       Charlotte, NC 28203
                                                       Tel**:** (704) 377-6680
                                                       Facsmile**:** (704) 377-6690
                                                       gjackson@ncadvocates.com

                                                       **BLOCK & LEVITON LLP**
                                                       Jeffrey C. Block, Esq.
                                                       Whitney E. Street, Esq.
                                                       Erica Sorg, Esq.
                                                       155 Federal Street, Suite 1303
                                                       Boston, Massachusetts 02110
                                                       Tel:  (617) 398-5630
                                                       Facsimile:  (617) 507-6020
                                                       jblock@blockesq.com
                                                       wstreet@blockesq.com
                                                       esorg@blockesq.com

83